**In re Kenneth E. WALDRON, Respondent.**

**No. 70107.**

Supreme Court of Missouri, En Banc.

June 19, 1990.

Daniel J. McMichael, Chesterfield, for informant.

Leonard J. Frankel, St. Louis, for respondent.

ORIGINAL DISCIPLINARY PROCEEDING

COVINGTON, Judge.

This is an original disciplinary proceeding instituted by the Advisory Committee of the Missouri Bar pursuant to *Rule 5*[1] against respondent, Kenneth E. Waldron.

---

1. All references are to the Supreme Court Rules. Disciplinary Rule ("DR") references in the body of this opinion are to former Rule 4, the Code of Professional Responsibility. Former Rule 4, effective January 1, 1971, governed during the period that included some of the incidents giving rise to this proceeding. The Code of Professional Responsibility has since been replaced by the Rules of Professional Conduct as adopted on August 7, 1985, and effective on January 1, 1986.

A six-count information charged respondent with violation of the following Supreme Court Rules and Disciplinary Rules of *Rule 4: Rules 1.5(a) and (b), 1.15(b), 1.16(d), 3.3(a)(1), 8.4(c); DR 1–102(A)(5); DR 2–111(A)(2); DR 7–102(A)(1) and (5); DR 7–104(A)(1); DR 9–102(B)(4).* The information prays that respondent be disbarred from the practice of law.

The Court appointed as Master to hear the proceedings the Honorable Flake L. McHaney, Judge of the 35th Judicial Circuit. Judge McHaney made findings and recommended that respondent be suspended from the practice of law for six months. The Master's findings, conclusions and recommendations in a disciplinary proceeding are advisory in nature. *In re Adams,* 737 S.W.2d 714, 717 (Mo. banc 1987). This Court reviews the evidence *de novo,* determines independently the credibility, weight and value of the witnesses, and makes its own conclusions of law. *In re Murphy,* 732 S.W.2d 895, 902 (Mo. banc 1987). After independent review of the record this Court agrees substantially with the Master's findings and recommendations.

Of the six counts charged, this Court agrees with the Master that the evidence does not require discipline in Count IV. Because the purpose of disciplinary proceedings is to protect the public and maintain the integrity of the legal profession, *In re Littleton,* 719 S.W.2d 772, 777 (Mo. banc 1986), there is no need to recite facts that do not serve that purpose.

## THE AINSWORTH MATTER

Gerald Ainsworth retained respondent to represent him in matters related to an automobile accident in which Mr. Ainsworth was involved on August 28, 1985. Ainsworth sustained serious injuries and was hospitalized for twelve days. Ainsworth was covered by a liability insurance policy with State Farm Insurance Company ("State Farm"). The policy included medical payment benefits in the sum of $5,000.00. During Ainsworth's hospitalization, State Farm's claims adjustor advised Ainsworth of State Farm's complete willingness to make available the medical payment benefit up to the amount of $5,000.00 upon receipt of appropriate verification of medical expenses incurred. State Farm's obligation to pay medical expenses up to $5,000.00 was never in dispute.

James W. Barnes operated the other automobile involved in the accident. Approximately one week after Ainsworth was discharged from the hospital, he received correspondence advising of Barnes' claim for damages against Ainsworth. Ainsworth engaged respondent to represent his interests in the matter and to file a counterclaim against Barnes for Ainsworth's personal injuries. Ainsworth agreed to pay respondent a contingency fee of fifty percent of the recovery.

The following day respondent mailed a written contract covering matters related to the personal injury to Ainsworth for his signature. The contract, executed on September 13, 1985, contained no provision relating to collection of medical payment benefits. Respondent sent an attorney's lien letter to State Farm. Respondent and Ainsworth dispute the time at which they initially discussed disposition of the medical pay benefits and disagree about the content of respondent's representations to Ainsworth regarding the purpose of the lien on the medical payments benefit.

Ainsworth also requested representation in proceedings arising from two traffic tickets issued as a result of the August 28, 1985, accident and from an unrelated traffic ticket issued in Crestwood, Missouri. In addition, Ainsworth wanted respondent to initiate litigation against the City of Crestwood and the police officers of Crestwood for "false arrest." Respondent secured continuances in the traffic cases and, with the consent of Ainsworth, referred the traffic matters to another lawyer whom Ainsworth paid directly.

Ainsworth subsequently discharged respondent. On December 4, 1985, before State Farm had knowledge of the discharge, respondent sent his investigator to the office of State Farm and obtained from State Farm a draft in the amount of $5,000.00 representing the medical payment; the draft included respondent as

payee along with Ainsworth and the hospital. To secure possession of the draft, respondent's investigator obtained copies of Ainsworth's hospital records and discharge summary and delivered them to the insurance company. Through other hospital insurance, Ainsworth's hospital bill, well in excess of $5,000.00, had been substantially paid; $646.11, however, remained unpaid.

Ainsworth's discharge of respondent was communicated to respondent through letter dated December 3, 1985, and stamped "received" by respondent December 6, 1985. By that letter Ainsworth also requested respondent to send "a fair bill for services." It is not clear whether respondent knew he was discharged when he obtained the medical payment draft. The Master found and the record reflects clearly, however, that respondent knew at the latest on December 5, 1985, that he was discharged. His statement for services to Ainsworth sought, by its language, Ainsworth's approval "... this 5th day of December, 1985." The statement itemized two services related to the contingency fee damage suit.

Ainsworth refused to execute the draft for medical payments and respondent refused to deliver the draft to Ainsworth. Respondent filed suit in the associate division of the Circuit Court of Cape Girardeau County praying in the alternative for attorney's fees of $1,800.00 pursuant to the statement rendered or $2,500.00 representing fifty percent of the recovery. Respondent appeared on his motion for summary judgment and gave testimony. Neither Ainsworth nor his attorney was present. Ainsworth subsequently filed a counter-affidavit, and on that date the court entered judgment in favor of respondent and against Ainsworth in the amount of $2,500.00. Respondent then issued a garnishment to State Farm, returned the $5,000.00 draft to State Farm, and received from State Farm a draft payable to him in the amount of $2,500.00.

The Master found in mitigation that respondent *quickly* filed suit against Ainsworth and obtained a judgment after promptly notifying Ainsworth that respondent was holding the draft. The Master found that Ainsworth requested respondent to do other work for him and owed respondent a reasonable fee for the work. In aggravation, however, the Master found respondent's testimony and evidence of the amount of time spent in service to Ainsworth unbelievable and damaging to respondent's credibility in the entire proceeding.

Respondent's actions discredit the profession. At no time was respondent employed to collect the medical payment nor was respondent ever authorized to obtain the draft and, borrowing the Master's accurate description, "hold it hostage." Respondent did not promptly pay to his client funds which the client was entitled to receive. Respondent violated *Rule 1.15(b) and DR 9-102(B)(4).*

## THE FADLER AND HECHT MATTERS

In both the Fadler and Hecht cases, respondent violated *DR 7-104(A)(1).* The rule prohibits a lawyer, when representing a client, from communicating about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

In the Fadler matter respondent represented Sherry Lee Fadler who instituted dissolution proceedings against her husband, Larry Fadler. On the eve of January 4, 1985, the date of the trial setting in the matter, an ice storm caused the trial judge to cancel all court proceedings in Bollinger County where the contested case was scheduled to be heard. Neither attorney appeared because each had been notified there would be no trial. Unaware of the cancellation, both parties appeared, Mrs. Fadler having traveled from St. Charles, Missouri, to do so.

The parties met without counsel and negotiated an agreement. They attempted to contact Mr. Fadler's attorney but were informed that he was out of town. Mrs. Fadler then contacted respondent who agreed to permit the Fadlers to come to his

office. At respondent's office, respondent made changes in a previously proposed settlement agreement to effect the agreement finally reached by Mr. and Mrs. Fadler. Each party signed the agreement at respondent's office, and respondent notarized both signatures. Although respondent testified that he did not communicate with Mr. Fadler, the record contains credible contrary evidence. Respondent's testimony in this regard is not believable.

Respondent sent Mr. Fadler's attorney a copy of the agreement. The attorney did not object to the agreement or to what had transpired. Neither Mr. Fadler nor his attorney intended to seek to have the agreement set aside. The decree ultimately rendered did not substantially change the terms of the agreement as modified.

In permitting Mr. Fadler to come to his office, knowing that Mr. Fadler was represented by another attorney, and in discussing the settlement in the presence of Mr. Fadler without attempting to contact the other attorney and without the prior consent of the other attorney, respondent directly violated *DR 7-104(A)(1)*.

In the Hecht dissolution case respondent represented James Hecht. LaRhonda Hecht, wife of James, employed a Cape Girardeau attorney. After unsuccessful negotiations, the case was set for trial on July 11, 1985. On or about July 6, without notice to respondent, James and LaRhonda Hecht appeared at respondent's office. Mr. Hecht advised respondent that the parties had agreed to changes in a proposed agreement earlier prepared by Mrs. Hecht's attorney. After discussing the case with both parties, respondent changed the proposed agreement and both parties executed the settlement.

Upon leaving respondent's office, LaRhonda Hecht telephoned her attorney and left a message relieving him from further representation of her. Respondent sent the settlement agreement to the court and a copy of his transmittal letter to the court to Mrs. Hecht's attorney, who immediately complained to respondent. Mrs. Hecht appeared at the scheduled hearing accompanied by her attorney and objected to a provision in the separation agreement she had previously executed. The court modified the agreement pursuant to the objection and entered a decree in accordance.

Respondent knew that LaRhonda Hecht was represented by another lawyer in the dissolution proceeding. By discussing the settlement agreement in Mrs. Hecht's presence and securing her signature to a revised settlement without contacting or obtaining the consent of her attorney, respondent violated *DR 7-104(A)(1)*.

The Master found in mitigation in both of these dissolution-related matters that respondent did not cause the parties to come to his office and that respondent immediately notified opposing counsel of the amended agreements without attempt to conceal what had transpired.

## THE PENDER MATTER

In performing services for Larry Pender, respondent is charged with violating *Rules 1.5(a) and (b)*. *Rule 1.5(a)* requires that a lawyer's fee be reasonable and delineates the factors to be considered in determining the reasonableness of a fee. *Rule 1.5(b)* provides that, when a lawyer does not regularly represent a client, the lawyer shall communicate to the client the basis or rate of the fee, preferably in writing, before or within a reasonable time after commencing the representation.

The mother of Larry Pender desired to deed to her son modestly improved real property having a value of approximately $3,000.00. The record reflects Mr. Pender to be, in the Master's words, an "unsophisticated but honest man." Mr. Pender asked respondent the cost of having the property transferred to him and his wife. Respondent replied that the cost would be approximately $50.00. Mr. Pender obtained from his mother all the papers regarding the property including a partial abstract and delivered these to respondent. Without authorization, respondent had the abstract brought to date at a cost of $99.00, rendered a title opinion, and prepared the deed. Respondent paid the abstract company and submitted to Mr. Pender a bill of $400.00. After Pender filed a

formal complaint, respondent refunded to Pender $350.00.

Respondent is in violation of *Rule 1.5(a)*. Mr. Pender wanted only a deed. The fee charged by respondent was unreasonable in that substantially all of it was generated by work neither wanted nor requested by the client. Respondent is also in violation of *Rule 1.5(b)*. He did not regularly represent Mr. Pender, and he communicated to Mr. Pender when commencing representation that the fee would be $50.00, not $400.00.

## THE BOCK MATTER

Respondent contracted with Southeast Missouri Legal Services ("SeMo") in August of 1985 to represent Linda Bock in obtaining a dissolution of her marriage. The contract with SeMo prohibited respondent from obtaining any fee from the client. SeMo was to pay respondent's fee although, under the contract, the attorney is encouraged to collect the fee from the opposing party where appropriate. By terms of the contract, if Mrs. Bock were to decide not to proceed with the dissolution, respondent was to collect a fee only from SeMo.

In disregard of the contract, respondent demanded of and obtained from Mrs. Bock a document guaranteeing that she and her brother, Allen Oberbeck, would pay respondent's fee in the event that Mrs. Bock failed to pursue the dissolution action to conclusion. Commencing October of 1986, respondent directly billed Mrs. Bock for services in handling the dissolution and he did so on a continuing basis.

The court ultimately entered a decree of dissolution under which eighty percent of a $607.31 federal income tax refund check was awarded to Mrs. Bock. The decree also awarded respondent an attorney's fee of $400.00 against Mr. Bock. Linda and Michael Bock endorsed the check at respondent's office, respondent took $430.00 from the check and delivered the balance to the parties. Mrs. Bock and respondent dispute the genesis of the idea that respondent would be compensated from the federal income tax refund check.

After making inquiries, Mrs. Bock contacted SeMo and learned that SeMo was paying the bill. She complained to respondent whose response was angry and hostile. After Mrs. Bock threatened to file a complaint with the Bar Committee, respondent returned the money he collected from SeMo and returned to Mrs. Bock $350.00. By letter of April 4, 1986, respondent advised Mrs. Bock of these facts but also advised that he would continue to attempt to collect money from her former husband, and, in the event that he failed to collect from Mr. Bock, he would continue to look to Linda Bock and her brother for payment of his fee.

Informant charged respondent with conduct contrary to *Rule 1.5(a) and Rule 1.15(b)*. *Rule 1.5(a)* requires that a lawyer's fee be reasonable. As evaluated by the factors listed in *Rule 1.5(a)*, the evidence does not support a finding that the fee is unreasonable. The evidence does support, however, the finding of a violation of *Rule 1.15(b)*. That rule requires a lawyer to deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, to render promptly a full accounting of the funds or property. Respondent was not entitled to retain any monies belonging to Mrs. Bock. Respondent was entitled to collect a $400.00 fee from Mr. Bock on the condition that he then refund to SeMo the amount which SeMo had paid him. Only after Mrs. Bock complained did respondent reimburse SeMo for the money it had paid him and refund to Mrs. Bock the money she had paid respondent. Respondent's belated admission that his conduct in this regard was a mistake does not diminish the seriousness of his flagrant violation of *Rule 1.15(b)*.

Informant also charges respondent with violation of *Rule 8.4(c)*, which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. According to Mrs. Bock, before the informal hearing of this charge and certain others, respondent telephoned Mrs. Bock, asked her to burn any file material

that she had, and indicated that he had destroyed his file. In contradiction respondent testified that he agreed at Mrs. Bock's request to destroy bills to Mrs. Bock and the guarantee she signed. The Master found the evidence insufficient to support the charged violation. Although respondent's veracity is questionable in this regard, the Court finds the contradictions in the record of the Bock matter corroborate the Master's finding.

## AGGRAVATION AND MITIGATION ISSUES

In respondent's answer, he admitted most of the allegations of fact set forth in each count charged but denied that his conduct in each of the counts was unethical or unprofessional or that he was guilty of any acts of professional misconduct. Throughout his testimony before the Master, the respondent continued to deny misconduct although he admitted having made a "mistake," and before this Court he admits to having exercised poor judgment in several of the matters contained in the information.

Relative to respondent's conduct before the Master, informant charges respondent with numerous violations of *Rule 3.3(a)(1)*, which prohibits a lawyer from knowingly making a false statement of material fact or law to a tribunal. In relation to the Pender matter, the evidence is insufficient to support the charge. As charged in regard to the Ainsworth, Hecht and Fadler matters, however, this Court agrees with the Master's findings that certain testimony of respondent, as noted above, was not believable. Respondent's lack of veracity with respect to any part of the proceeding necessarily taints his credibility with respect to the entire proceeding. Respondent, fortunately, has caused no permanent injury to any person but himself, but he has caused a potentially adverse effect on the disciplinary proceeding. In this regard respondent violates the most fundamental duty of an officer of the court.

As noted within the discussions of the charges lodged against respondent, some mitigating circumstances existed in the Ainsworth, Hecht and Fadler matters. As other mitigating evidence respondent adduced testimony of seven attorneys that respondent possesses the required legal knowledge to represent his clients, that he is thorough and well-prepared, and that he provides good legal services to his clients. It is notable, however, that none of the attorneys practices in Cape Girardeau or Jackson, Missouri, where respondent maintains his law office.

Before this Court, through counsel, respondent confesses difficulty in controlling his temper. He confesses having taken action in haste without proper reflection upon the consequences of the action. Respondent acknowledges psychological difficulties that negatively affect his professional conduct and alleges he has sought assistance in that regard. Seeking a mere admonition, respondent offers to participate in weekly therapy sessions with a counselling service in conjunction with the Bar Association of Metropolitan St. Louis for a period of a minimum of one year with regular reports to be submitted by the counselling service to the Advisory Committee of the Missouri Bar.

Reprimand in this case is clearly insufficient to protect the public and maintain the integrity of the profession. The Court regards respondent's conduct in the Ainsworth and Bock matters, as well as his attempts to mislead the Master and this Court during the hearing before the Master, to be particularly egregious. Absent mitigating circumstances, discipline might well be disbarment. Discipline imposed by this Court has as its objective the protection of the public and the maintenance of the integrity of the profession. *In re Maier*, 664 S.W.2d 1, 2 (Mo. banc 1984). To disbar an attorney it must be clear that the attorney is not fit to continue in the profession; disbarment is reserved only for clear cases of severe misconduct. *In re Forge*, 747 S.W.2d 141, 145 (Mo. banc 1988). The Court finds the appropriate intermediate discipline to be suspension. Respondent is suspended from the practice of law for six months. Respondent is further ordered to participate in weekly therapy sessions for a

minimum of the six-month period of suspension and to require the counselling service providing therapy to report regularly during the period of suspension to the Advisory Committee of the Missouri Bar.

Costs of this proceeding are assessed against the respondent.

All concur.