**In re Allen I. HARRIS, Respondent.**

No. 76271.

Supreme Court of Missouri,
En Banc.

Dec. 20, 1994.

John E. Howe, Sam S. Phillips, Jefferson City, for informant.

Henry Thomas, St. Louis, for respondent.

## DISCIPLINARY PROCEEDING

HOLSTEIN, Judge.

In this attorney discipline proceeding, respondent Allen I. Harris was charged by information alleging various violations of the Rules of Professional Responsibility found in Rule 4. Because this Court concludes respondent has violated Rules of Professional Responsibility 1.4 and 8.1, a public reprimand is ordered.

After a two-count information was filed and a master[1] appointed, two counts were orally added with respondent's consent. No objection was made to that procedure. The master found only that respondent had twice violated Rule of Professional Responsibility 8.1 by failing to respond to inquiries made by the special representative of the disciplinary counsel's office. The master's findings, conclusions and recommendations are helpful, but advisory in nature. This Court examines the evidence and ultimately makes the necessary determinations of fact. *In re Hardge–Harris,* 845 S.W.2d 557, 558 (Mo. banc 1993). The informant must prove the charges by a preponderance of the evidence. *In re Griffey,* 873 S.W.2d 600, 601 (Mo. banc 1994).

1. Honorable Charles B. Blackmar.

## I.

Respondent was employed to collect a debt of $8,300.00 remaining due on a contract owed to Clubbs Precision Plumbing, Inc., from the St. Louis Rabbinical College in December of 1987. The contract provided also for the customer to pay legal fees in the event of nonpayment. Suit was filed February 16, 1988. The case was delayed by the college's demand for a jury trial as well as the forfeiture of its charter. During the period in question, long delays in getting cases to trial in St. Louis County where a jury was requested were apparently the norm. Although Clubb's case against the college was set for trial on several occasions in 1990 and 1991, it was so far down the docket it was never reached.

By May of 1991, the college had fallen on hard financial times as was noted by an article in the *St. Louis Post Dispatch* newspaper. This article was brought to the attention of respondent by Mrs. Mary Clubb, an officer and shareholder in the corporation.

Aside from agreeing to the fact that there were settlement offers recommended by respondent and that a judgment was entered in favor of the corporation and against the college for $8,300.00 on April 14, 1992, the testimony of respondent and Mrs. Clubb contradicted each other. At one point in her testimony, she was adamant that she refused offers of judgment for less than $8,300.00 "plus costs and plus interest and plus his [attorney] fees" but conceded on cross-examination that "what she was after" was the $8,300.00. She associates the timing of the respondent's recommendation of settlement offers with the 1991 newspaper article indicating the college was insolvent. But she insists the settlement offers came in the spring and summer of 1992. Mrs. Clubb also asserted that respondent led her to believe throughout the summer of 1992 that the case would be going to trial around Thanksgiving of that year. She claims only to have learned a judgment was entered in December of 1992 when she went to respondent's office to discharge him.

Respondent's testimony is quite different. He claims he made her aware of the difficulties of collecting on any judgment. He en-

couraged her to accept the settlement offers that were made. He stated that Mrs. Clubb gave him express authority to obtain a judgment for $8,300.00 plus court costs a day or two prior to the entry of judgment on April 14, 1992. He also claims to have reported that to Mrs. Clubb on April 16, 1992. While he had no correspondence reflecting this, respondent produced a computer printout of notations from his time slips. The printout showed that on January 21, 1992, he was offered $6,500.00 but was told to settle the case for "nothing less than the full amount." The printout also showed he had a telephone conversation with Mrs. Clubb on April 16, 1992. He also claimed that he billed Mrs. Clubb $43.50 based on the April 16 time slip and that the bill was paid. He was paid a total of $396.15 for services and waived any claim to any additional fee.

A lawyer is required to act with reasonable diligence, to abide his client's decisions concerning the objectives of representation, to keep a client reasonably informed about the status of a matter, and to explain matters to the extent reasonably necessary to keep a client informed. *Rules of Professional Responsibility 1.2, 1.3* and *1.4.* The question presented here is whether informant proved by a preponderance of the evidence that respondent violated any of those rules in regard to representing Clubbs.

Whether respondent violated the above rules in this case is a very close factual determination. The decision as to who to believe is entirely dependent on the credibility of the witnesses. Mrs. Clubb's testimony was at times inconsistent and unclear as to exactly what was communicated to her about the settlement offers, when the offers were communicated, and the details of her response. Also, she was vague about whether she saw the newspaper article indicating that the college was in desperate financial straits in 1991 or in 1992. The greater weight of the evidence in this case makes it apparent that by May of 1991 she was aware there was little chance of actually collecting the full amount of any judgment that would be entered. She then began to cast blame on respondent even though any harm done by the trial delay or by the financial condition of

the college was not attributable to any unprofessional conduct by respondent.

It must also be said the respondent deviated from what is surely the standard practice of notifying a client in writing of the details of any consent judgment entered when a client is not present. The advantage of the written notification is not merely to protect a lawyer from potential complaints by a client. The purpose of such communication is to avoid misunderstandings that may occur in the process of oral communication. This concern is amplified where a client may have unreasonable expectations regarding a claim. While the informant here failed to prove by a preponderance of the evidence that respondent did not have authority to consent to the $8,300.00 judgment, there is sufficient evidence to find that after entry of the consent judgment, respondent failed to explain matters to his client to the extent necessary to keep his client reasonably informed. That is a violation of the Rule of Professional Responsibility 1.4.

In addition, respondent did not reply to an inquiry of disciplinary counsel's special representative dated February 8, 1993, regarding the Clubb complaint. Respondent also failed to answer the information filed against him in a timely fashion until an order had been entered summarily disbarring him. These acts on the part of respondent were a violation of Rule of Professional Responsibility 8.1 in that he knowingly failed to respond to a lawful demand for information from a disciplinary authority.

## II.

Count II of the information dealt with respondent's failure to adequately represent client Wilma Thompson in a matter. At the beginning of the proceeding, the count relating to that complaint was dismissed. However, the master found, and we agree, that respondent violated Rule of Professional Responsibility 8.1 regarding that complaint by failing to reply to the inquiry of the special representative dated February 8, 1993.

## III.

■ Respondent was charged with failing to act promptly and diligently in connection with representation of Barbara Baker in a criminal matter where Ms. Baker was charged with stealing. A plea agreement was negotiated whereby she would not be sentenced as a prior offender. When completing the paperwork, respondent accidently put an X in the box indicating prior offender status. He immediately caught his mistake, scratched out the X and marked another box. Personnel at the department of corrections were unsure which box was properly marked and determined that Ms. Baker was a prior offender. She contacted respondent and he told her he would take care of it. Meanwhile, Ms. Baker filed a motion for postconviction relief to correct her sentencing status. After being notified of this by the respondent, the circuit attorney conceded the mistake and agreed to confess the prior offender part of Ms. Baker's post-conviction motion. The sentence now conforms to the plea agreement and Ms. Baker was not harmed. As found by the master, the evidence does not support a finding that respondent violated Rule 1.3 for failing to act promptly and diligently.

## IV.

■ Respondent allegedly violated his duty of representation toward Shirley McGill in a medical malpractice claim. Ms. McGill was paralyzed by a bullet wound and developed bedsores while hospitalized. Ms. McGill wanted to sue for inadequate nursing. After reading her medical records, studying the applicable law, and soliciting the medical expertise of a registered nurse, respondent concluded Ms. McGill did not have a viable malpractice claim. He advised her by telephone of his decision not to represent her in the matter and encouraged her to seek another attorney's opinion. This was done in sufficient time to allow her to find another attorney to bring the claim. Respondent violated neither Rules 1.3 nor 1.4 in connection with that representation.

## V.

■ Rule 8.1(b) of the Rules of Professional Conduct states in pertinent part:

A lawyer ... in connection with a disciplinary matter, shall not ... knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority ...

In this case it was not an isolated incident of mere inadvertence or simple neglect in responding to the disciplinary counsel. Members of the legal profession are required to provide disciplinary counsel with a courteous response and prompt cooperation when a request is made for information regarding a disciplinary complaint. *In re Staab,* 719 S.W.2d 780, 784 (Mo. banc 1986). Failure to respond to such requests adversely reflects on an attorney's fitness to practice law and promotes delay of the entire disciplinary process.

In addition, as noted above, respondent violated Rule of Professional Responsibility 1.4, by failing to explain matters reasonably necessary to keep the Clubbs informed of the consent judgment. Obviously, it is irritating to clients and damaging to the public perception of the legal profession when clients are not given timely and adequate information regarding the status of their case. *In re Kopf,* 767 S.W.2d 20, 24 (Mo. banc 1989) (Blackmar, J., concurring). In this particular case, it is significant, however, that respondent made no personal gain from his actions. In addition, actual harm to the client is highly debatable because the judgment, regardless of amount, was very likely uncollectible.

Respondent has been an attorney for more than thirty years, practicing law in St. Louis. Until 1988 he had not been the subject of any attorney discipline. The allegations of misconduct toward clients found to exist here arose during the four year period from 1988 to 1992. During that same time frame three other complaints, each relating to neglect of client business resulted in private admonitions. In 1992, respondent sought the advice of a psychiatrist, was diagnosed with depression and has since been treated. However, it must be noted that respondent's failure to respond to the information in this case occurred a year after his first consultation with the treating psychiatrist. Nevertheless, by January of 1994 the psychiatrist indicated that respondent was free of symptoms.

The primary purpose of a disciplinary action is to protect the public. *Matter of Westfall,* 808 S.W.2d 829, 836 (Mo. banc 1991). Respondent's prior admonitions will be considered in determining what action should be taken in this case so that the public may be adequately protected. Respondent clearly needs to evaluate his methods of communicating with his clients. More written communication must be done to avoid future problems. He must timely respond to inquiries of the disciplinary authorities in the future.

Absent aggravating circumstances, a reprimand is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information and causes an injury or potential injury to a client. *ABA Standards for Imposing Lawyer Sanctions, Rule 4.63* (1986). Among those aggravating factors to be considered is a pattern of neglect and the intentional failure to cooperate with the disciplinary agency. *ABA Standards, Rule 9.2* (1986). Against such aggravating factors, one must take into account the mitigating factors of an absence of any disciplinary action taken against respondent prior to 1988, the absence of any dishonest or selfish motive, and the presence of emotional problems which by January 1994 seemed to be in the process of resolution. *ABA Standards, Rule 9.3* (1986). On balance the appropriate discipline appears to be a public reprimand. However, respondent needs further monitoring by the disciplinary counsel's office to ensure that he establishes proper office procedures to avoid the violations which have occurred here and to ensure that his recovery from the emotional problems is sustained.

Accordingly, it is ordered that respondent be publicly reprimanded for his failure to explain matters to the extent reasonably necessary to keep his client informed and for failing to cooperate with disciplinary counsel's inquiries. It is also ordered that respondent submit to such programs of law office management as shall be directed by the disciplinary counsel's office and shall provide disciplinary counsel's office with such reports of progress of treatment for his emotional condition as that office shall require.

It is further ordered that such monitoring by disciplinary counsel's office continue for a period of two years. Costs of this action are assessed to respondent.

All concur.