**In re Eric J. SNYDER, Respondent.**

**No. SC 82299.**

Supreme Court of Missouri.
En Banc.

Dec. 27, 2000.

As Modified on Denial of Rehearing
Feb. 13, 2001.

Sharon K. Weedin, Jefferson City, for appellant.

Eric J. Snyder, Clayton, pro se.

## ORIGINAL DISCIPLINARY PROCEEDING

PER CURIAM.

### I.

Respondent obtained his Missouri license to practice law in 1975 and is engaged in a solo practice in the areas of tax, estate planning, criminal law, domestic law, and bankruptcy. Respondent's disciplinary action relates to fee agreements fashioned with two clients where he acquired adverse pecuniary interests in the clients' respective residential properties. In determining the level of discipline to impose, the Court considers Respondent's actions in light of the propriety of sanctions under the Missouri rules and the American Bar Association model rules for attorney discipline (ABA model rules). Respondent's license is ordered suspended indefinitely with leave to apply for reinstatement not sooner than six months from the date of this opinion and after completion of continuing legal education courses in bankruptcy and ethics as directed by the chief disciplinary counsel (CDC).

### Client Jesse Henderson

On April 29, 1993, Respondent met with Jesse Henderson at the Chesterfield adult correctional facility to discuss representing him regarding a criminal complaint of rape and sodomy. Nine days prior to meeting, the two discussed the use of Henderson's life estate in a single-family residence to cover payment of bond and attorney's fees. Henderson also shared a remainder interest in the property with his eight brothers and sisters. Respondent convinced Henderson to execute two quitclaim deeds transferring his ownership interests to Respondent to effectuate the bond and fee arrangement. The terms of this agreement were not communicated in writing to Henderson prior to or during the transaction, nor was he advised to consult with independent counsel prior to entering into the arrangement. A written agreement memorializing the arrangement was executed on June 18, 1993, two months after signing the deeds.

The prosecuting attorney refused to accept one of the deeds in lieu of bond, because the other remaindermen would not join in signing over their interests. Henderson ultimately pleaded guilty to the criminal charges and remained incarcerated until February 24, 1994. Eight months after his release, Respondent provided Henderson with a document detailing attorney's fees of $26,123.76 and costs of $7,100. Respondent included in his bill time spent inspecting the house, time spent buying materials for improvement of the house, the actual home improvements, "protection and collection costs," and property taxes paid by Respondent in the amount of $10,383.

In November 1994, unable to sell the home due to the remaindermen's refusal to consent, Respondent convinced Henderson to sign another agreement authorizing the partition, rental, and sale of his life estate. As part of this agreement, Respondent was able to lease the property to his daughter for $433 per month to be credited towards the total fees charged. Sometime thereafter, Respondent filed an action for partition with the Circuit Court of St. Louis County, but once Respondent fully explained the implications of the partition sale, Henderson reneged. Notwithstanding Henderson's objections, Respondent elected to continue with the action although it was ultimately dismissed. As of January 1998, Respondent claims a debt against Henderson in the amount of $36,000, including interest.

### Client Bishweshwar Mahendra

Respondent represented Bishweshwar Mahendra in a criminal tax case. In satis-

faction of his fees, Mahendra executed a promissory note secured by a deed of trust for up to $35,000 on his house. Prior to completion of this representation, Respondent learned that Mahendra's mortgagee was going to foreclose on the house. To protect the equity in the house, Respondent convinced Mahendra to file chapter 7 bankruptcy proceedings. The bankruptcy sale collected $17,171.64 on the house. After a dispute arose between Respondent and the bankruptcy trustee over the amount owed Respondent for his fees, Respondent filed a lien on the total amount of those proceeds. The bankruptcy court ordered payment to Respondent in the amount of $4,348 for the legal services provided in Mahendra's criminal defense and $1,000 for the bankruptcy services. The judge offset this award by $1,000 in sanctions against the Respondent for the conflict of interests created by his arguments for payment of his fees.

Respondent appealed the decision of the bankruptcy court to the federal district court. The district court not only affirmed the sanctions but also increased them by $4,352.80—the amount of fees the bankruptcy estate incurred in responding to the appeal—for filing a frivolous appeal. Respondent then appealed to the Eighth Circuit Court of Appeals, arguing that "to the extent [he] held an interest in the property for his encumbrance the debtor did not hold an interest in the property." Thus, according to Respondent, the proceeds from the sale of the house were not part of the bankruptcy estate. The Eighth Circuit, however, determined that his lien argument against the estate was not supported by the law or a good faith argument for modification of the law. Respondent was assessed an additional $7,093 in sanctions for filing the second frivolous appeal. The bankruptcy estate incurred a total of $21,500 in attorney's fees defending against the Respondent's collateral claims, resulting in a complete depletion of the estate's assets.

## II.

The disciplinary committee filed a two-count information against Respondent in January 1999. Count one alleged professional misconduct in violation of Rules 4–1.8 and 4–1.7 (conflict of interest) with regard to Henderson's representation. Count two alleged violation of Rules 4–1.1 (competence) and 4–1.8 and 4–1.7 with regard to Mahendra's representation. After a two-day hearing, Respondent was found to have violated the rules of professional conduct as charged in count one, and found in violation of the competency rule in count two. The Disciplinary Hearing Panel ("DHP") recommended a license suspension for eight months with leave to apply for reinstatement upon completion of continuing education credits in bankruptcy and ethics. The CDC seeks affirmation of the DHP's above recommendations, but also seeks a finding of violation of Rules 4–1.7 and 4–1.8 with respect to count two and Mahendra's representation.

## III.

The DHP's findings of fact, conclusions of law, and recommendations are advisory. *In re Oberhellmann*, 873 S.W.2d 851, 852–53 (Mo. banc 1994). This Court reviews the evidence de novo, independently determining all issues pertaining to credibility of witnesses and the weight of the evidence, and draws its own conclusions of law. *Id* Professional misconduct must be proven by a preponderance of the evidence before discipline will be imposed. *In re Smith*, 749 S.W.2d 408, 410 (Mo. banc 1988).

Missouri's general conflict of interest rule, Rule 4–1.7(b), states in part:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; (2) the client consents after consultation.

Some conflicts of interest are considered to compromise the client's interests per se and are strictly prohibited or, at a minimum, require additional safeguards. With regard to prohibited transactions, Rule 4–1.8(a) states:

> (a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
>
> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;
>
> (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
>
> (3) the client consents in writing thereto.

■ At a minimum, when a lawyer accepts an interest in property other than cash in payment of a fee and after the transfer both the lawyer and the client hold a legal or equitable interest in the property, the transaction is subject to the heightened scrutiny and notice requirements of Rule 4–1.8(a). That is not to say that a lawyer may not accept property other than cash in payment of a fee. The "Terms of Payment" comment to Rule 4–1.5 makes clear that Rule 4–1.8(a) does not prohibit an attorney from accepting property from a client in payment of fees. The comment, in relevant part, states: "A lawyer may accept property in payment for services, such as an ownership interest in an enterprise, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to Rule 1.8(j)." The comment also makes clear that when an attorney receives property in payment of fees, the fee transaction will be subjected to heightened scrutiny if challenged. The comment notes that "a fee paid in property instead of money may be subject to special scrutiny because it involves questions concerning both the value of the services and the lawyer's special knowledge of the value of the property."

## Count One

■ Count one involves two quitclaim deeds executed by Henderson, in part, to pay Respondent's fees. Respondent concedes that he took the quit claim deeds to secure payment of his fee and that he would hold in trust any money gained from the sale. Because both Respondent and Henderson retained interests in Henderson's property, the transaction was subject to the special scrutiny standard that must be satisfied on these facts by the protections set forth in Rule 4–1.8(a). Specifically, in order for Respondent to have met his ethical obligations to Henderson in accepting Henderson's quitclaim deeds in payment of fees, Respondent needed to ensure that: (1) the transaction and terms on which Respondent acquired the quitclaim deeds were fair and reasonable to Henderson, were fully disclosed in writing to Henderson, and were transmitted to Henderson in a manner that could be reasonably understood by him; (2) Henderson was given a reasonable opportunity to consult outside counsel in the transaction; and (3) Henderson consented to the transaction in writing.

Respondent failed to timely provide Henderson with a written explanation of the fee arrangement. Respondent also failed to advise Henderson that he should seek the advice of outside counsel. Because Respondent failed to satisfy the requirements of Rule 4–1.8, he violated his ethical obligations to Henderson.

## Count Two

■ Regarding the second count, once Respondent filed the bankruptcy action and attempted to impose a lien on the proceeds of the sale, his interests diverged from his client's. Respondent became a named party to the bankruptcy litigation and raised affirmative defenses to argue

his fee arrangement for the criminal tax evasion case should apply to his fees for filing the bankruptcy proceeding. Respondent's representation in the bankruptcy proceeding constituted a new agreement for additional services during an ongoing fiduciary relationship. Such agreements "are zealously scrutinized, and an attorney has the burden of proving that he did not take undue advantage of the client and that the agreement was fair and reasonable." *Schwartz v. Custom Printing Co.*, 972 S.W.2d 487, 489 (Mo.App.1998), (citing *Jo B. Gardner, Inc. v. Beanland*, 611 S.W.2d 317, 320–21 (Mo.App.1980)). Respondent was clearly in a position to realize that placing a lien on the proceeds from Mahendra's property would deplete his client's estate assets and financially restrict Mahendra in his ability to pay his non-dischargeable IRS debt.

Respondent followed this proceeding with frivolous appeals to the United States District Court, Eastern District, and the Eighth Circuit Court of Appeals resulting in further sanctions. The Eighth Circuit determined that Respondent was advancing legal arguments in direct conflict with his client's interests that were not supported by the law or a good faith modification for change in the law. *Snyder v. Dewoskin*, 131 F.3d 750, 759–60 (8th Cir. 1997). Respondent's frivolous legal actions ultimately depleted the entire bankruptcy estate from costs incurred in the defense against Respondent's claims.

Respondent's pursuit of his attorney's fees materially limited his representation of his client's interests in violation of Rule 4–1.7(b). No reasonable lawyer could believe that Mahendra's representation would not be adversely affected, and there is no evidence to suggest that Mahendra consented to Respondent's actions after receiving consultation as to the potential conflict of interest created by diverting estate assets away from other bankruptcy creditors.

Having acquired an adverse pecuniary interest in the subject matter of the bankruptcy proceeding, Respondent became obligated under Rule 4–1.8(a) to fully disclose, in a contemporaneous writing, how he would pursue securing his fees for the new and additional services being provided during this ongoing fiduciary relationship. Respondent should have disclosed his intent to file a lien on the proceeds from the sale of the property prior to initiating the bankruptcy proceedings. He also should have ensured that Mahendra had a reasonable opportunity to seek independent advice of counsel by advising him to pursue such and should have obtained written consent prior to proceeding.

In addition to the violations for Rules 4–1.7(b) and 4–1.8(a), Respondent provided incompetent representation. Rule 4–1.1 requires competent representation evidenced by the legal knowledge, skill, thoroughness, and preparation reasonably necessary to complete the representation. The memorandum opinion issued by the federal bankruptcy court noted that Mahendra's bankruptcy case was "routine and not complex." Respondent's own testimony during the disciplinary hearing demonstrated a total lack of understanding of the basic tenets of bankruptcy law in that Respondent stated that his encumbrance on the subject property removed the property interest from the bankruptcy estate. Additionally, Respondent's repeated failure to recognize that he did not qualify as a disinterested person in representing his client's estate while depleting the estate's assets in frivolous litigation demonstrates a total lack of competency for which disciplinary action is appropriate.

## IV.

The fundamental purpose of an attorney disciplinary proceeding is to "protect the public and maintain the integrity of the legal profession." *In re Waldron*, 790 S.W.2d 456, 457 (Mo. banc 1990). It is proper to consider mitigating factors, including the attorney's previous record, when determining the appropriate discipline. *In re Cupples*, 952 S.W.2d 226, 237

(Mo. banc 1997). *See also In re Harris,* 890 S.W.2d 299, 302 (Mo. banc 1994). Respondent acquired pecuniary interests in his client's residential properties initially to secure fees for his services, but in both instances these interests came into direct conflict with the client's representation. Respondent's failure to follow the procedural safeguards outlined in Rule 4–1.8(a) to avoid these conflicts, and failure to withdraw from the representation while promoting his own interests, exceeds the bounds of ordinary negligence. Respondent violated Rules 4–1.7 and 4–1.8 for constructing fee arrangements that created conflicting pecuniary interests in derogation of the attorney-client fiduciary relationship. Respondent also violated Rule 4–1.1 by his incompetence in the representation of Mr. Mahendra's bankruptcy proceedings.

The American Bar Association's Standards for Imposing Lawyer Sanctions (1991) (ABA Standards) recommend suspension when a lawyer knowingly violates a duty owed to the profession and "causes injury or potential injury to a client, the public, or the legal system." ABA Standards, Rule 7.2. *See also In re Cupples,* 979 S.W.2d 932, 936 (Mo. banc 1998). The commentary to Rule 7.2 states that suspension is appropriate under these circumstances "even when a lawyer does not intentionally abuse the professional relationship by engaging in deceptive conduct." Respondent may not have intentionally, or deceptively, set out to abuse the professional relationship between himself and his clients; however, he engaged in obvious violations of the conflict of interest rules and inflicted pecuniary harm upon his clients. Further complicating Respondent's position has been his steadfast refusal to recognize his breach of ethical principles as evidenced by multiple frivolous appeals.

The conflicts of interest created by Respondent cannot be accurately characterized as mere attempts to collect fees. Respondent attempted to charge Mr. Henderson legal fees not for legal services but rather for trips to the hardware store and for repairs to the house to which he had acquired the life estate in a questionable exchange of a quitclaim deed. With regard to Mr. Mahendra, despite repeated sanctions for frivolous appeals, Respondent continued legal action against his client, depleting Mr. Mahendra's bankruptcy estate and leaving him nothing to pay his non-dischargeable debts. It is difficult to see how inflicting such pecuniary damage against his own clients is mitigated by the fact that his prior criminal representation of these clients was successful.

In determining the level of discipline to impose, the Court considered Respondent's actions, the mitigating factors, which include that Respondent has practiced law in this state for twenty-five years without prior disciplinary action, and the propriety of sanctions under the Missouri rules and the ABA model rules. This Court orders Respondent's license suspended indefinitely with leave to apply for reinstatement no sooner than six months from the date of this opinion and after completion of continuing legal education courses in bankruptcy and ethics as directed by the CDC.

PRICE, C.J., WHITE, HOLSTEIN and BENTON, JJ., concur; LIMBAUGH, J., concurs in separate opinion filed; WOLFF, J., concurs in opinion of LIMBAUGH, J.

LIMBAUGH, Judge, concurring.

My initial view of this case, handed down as a dissenting opinion, was that I agreed that respondent should be punished, but I would issue a public reprimand rather than impose a suspension from practice. As a rationale for the dissent, I said the following:

This case does not involve the more serious violations regarding attorney-client relations such as theft or other fraud, or aggravating circumstances such as a history of public or private reprimands, that

have warranted a suspension in prior cases. None of these circumstances is involved in this case.

On the other hand, respondent's violations of the conflict of interest provisions are mitigated in a number of ways. First, the conflicts involve nothing more than respondent's attempts to secure payment of fees, the bulk of which were unquestionably due to him for successfully representing his clients in two very serious criminal matters. These kinds of conflicts are a far cry from the more conventional and more serious kinds of conflicts to which Rule 4–1.8(a) is addressed, such as acquisition of business interests in competition with a client, or even in co-ownership with a client. Second, regarding count one, the applicability of the conflict of interest provisions used to prosecute respondent was not altogether clear. As noted, a conveyance of property in payment of a fee is expressly allowed under Rule 4–1.5, and this appears to be the first case to hold that a conflict of interest arises, nonetheless. Third, and again as to count one, it appears that the client was not prejudiced by the conflict of interest that manifested in the dispute over the sale of the property. On this point, there is persuasive evidence in the record that the client knew that he had no means to pay the fees he owed to respondent without selling the property, and that the parties contemplated a sale of the property all along. Fourth, as to count two, it may be punishment enough that the federal courts imposed severe monetary sanctions against respondent for the frivolous appeals of the conflict of interest ruling. Fifth, it may be punishment enough that through all of the litigation, and perhaps because of it, respondent has not been paid the thousands of dollars owed to him for successfully representing his clients in either of the two criminal cases. Finally, respondent is no repeat offender. He has practiced 25 years without any disciplinary action taken against him until now.

Despite these mitigating factors, having now considered respondent's motion for rehearing and reconsidered his voluminous briefs and motions, I agree that a suspension is the appropriate sanction. Respondent's motion for rehearing, like his earlier briefs and motions, is replete with mischaracterizations of the facts and misapplications of the law. That concern, along with his refusal to concede even the most inconsequential point and his uncompromising persistence in pressing trivial points to pursue his innocence makes apparent that it may take a suspension from practice to gain his attention and reform his conduct.