**In re James F. CREWS, Respondent.**

**No. SC 86212.**

Supreme Court of Missouri, En Banc.

April 5, 2005.

Nancy L. Ripperger, Sharon K. Weedin, Office of the Chief Disciplinary Counsel, Jefferson City, MO, for Informant.

Jeffrey A. Keevil, Columbia, MO, for Respondent.

PER CURIAM.

## I.

James F. Crews, Respondent, obtained his Missouri license to practice law in 1964. Respondent's disciplinary action involves multiple violations of the rules of professional conduct in relation to his representation of Tom and Betty Hodge and Betty's son, Richard Vaughn (collectively Plaintiffs). Respondent is ordered suspended from the practice of law indefinitely with leave to apply for reinstatement in one year subject to the successful completion of this Court's enumerated conditions.

## II.

The facts, as reported by the Disciplinary Hearing Panel (DHP), are as follows: The Plaintiffs suffered injuries when a vehicle driven by Jerry Daniels executed a left-hand turn immediately in front of their vehicle making it impossible for Plaintiffs to avoid the ensuing collision. Respondent initially advised Plaintiffs that their own insurance policy would cover their injuries. After that coverage was exhausted, Respondent agreed to represent the Plaintiffs in a personal injury suit against Mr. Daniels and his employer, Miller County Motors (MCM). The fee contingency agreement for this representation was never memorialized in writing.

Respondent hired an investigator to substantiate whether Daniels was acting within the scope of his employment at the time of the accident; a fact the investigator was unable to confirm. As four years ticked by, Respondent failed to pursue the action further and was unresponsive to the Plaintiffs' repeated inquiries concerning the case. Finally, the Plaintiffs conducted their own investigation and were able to obtain an affidavit from Mr. Daniels stating that he was acting in the course of his employment at the time of the accident. Due to Respondent's delay in developing the case, the petition was not filed until five days prior to the running of the five-year statute of limitations.

Respondent was also uncommunicative with the Plaintiffs when MCM filed its motion for summary judgment alleging that Daniels was not acting in the scope of his employment at the time of the accident. Respondent filed no response to this motion and did not attend the hearing on the motion resulting in a ruling in favor of the defendants. Later, at the disciplinary hearing, Respondent would testify that it was unnecessary to defend against a summary judgment motion that he believed was deficient on its face. Respondent discounted the language in Rule 74.04(c)(2) mandating a response to summary judgment motions stating that it "doesn't mean anything."

The Plaintiffs discovered their case was dismissed when they contacted the circuit clerk's office and inquired about when the case would be docketed. Plaintiffs immediately contacted Respondent who informed them the court had mistaken their case for another case he was handling for them. Respondent assured the Plaintiffs that he would have the summary judgment set aside and filed a motion to set it aside alleging that his staff had improperly calendared the hearing date. In response to the Chief Disciplinary Counsel's (CDC) inquiry, Respondent wrote that he failed to appear at the hearing because he had confused the personal injury case with the other case.

Respondent next informed Plaintiffs that his motion to set aside the summary judgment had been overruled and that he would have to appeal the ruling. Plaintiffs offered to hire additional attorneys to assist but their offer was refused. Respondent's initial brief with the court of appeals was stricken for failure to comply with Rule 84.04; however, he was given another opportunity to correctly comply with the rule. Respondent failed on his second attempt to correct his brief's deficiencies and the appeal was dismissed. He never informed the Plaintiffs about the first time his brief was rejected, and when pressed for explanations about the dismissal, he informed them that their case was dismissed, he assumed, "because it was not worth pursuing."

Plaintiffs filed a complaint with the CDC, and after investigation the CDC filed an information against Respondent's license. The CDC alleged violations of Rules 4–1.1 (competence), 4–1.3 (diligence), 4–1.4 (communication), 4–1.5(c) (fees), and 4–8.4(c) (misconduct involving dishonesty). Hearing was held before the DHP and the panel recommended that Respondent be disbarred. The CDC now seeks affirmation of the DHP's recommendations. This Court has jurisdiction because it has the inherent authority to regulate the practice of law.[1]

### III.

The findings of fact, conclusions of law, and the recommendations from the DHP are advisory.[2] This Court reviews the evidence de novo, independently determining all issues pertaining to the credibility of witnesses and the weight of the evidence, and draws its own conclusions of law.[3] Professional misconduct must be proven by a preponderance of the evidence before discipline will be imposed.[4]

Having reviewed the briefs, the transcripts from the DHP hearing and all supporting documentation, and having heard

---

1. *In re Mid–America Living Trust Associates, Inc.,* 927 S.W.2d 855, 856 (Mo. banc 1996).

2. *In re Snyder,* 35 S.W.3d 380, 382 (Mo. banc 2000).

3. *Id.*

4. *Id.*

oral argument, the Court finds by a preponderance of the evidence that Respondent committed professional misconduct. Respondent's multiple positions on the events that transpired not only severely diminish his credibility, but a close examination of the record reveals that he does not contest the factual events as presented and determined by the DHP. Instead, Respondent maintains that the rules of professional conduct would not have required him to perform at a higher standard. This Court disagrees.

■ Rule 4–1.1 requires competent representation evidenced by the legal knowledge, skill, thoroughness, and preparation reasonably necessary to complete the representation. Rule 4–1.3 states that a "lawyer shall act with reasonable diligence and promptness in representing a client." Rule 4–1.4 requires a lawyer to keep a client reasonably informed about the status of a matter, to promptly comply with reasonable requests for information, and to explain matters to the extent necessary to allow the client to make informed decisions regarding the representation. Respondent breached these rules by (1) failing to keep the Plaintiffs informed of the progress of their case, (2) failing to adequately investigate Plaintiffs' claim, (3) failing to diligently pursue Plaintiffs' claim, (4) failing to respond to the summary judgment motion when required, and (5) failing to prepare an acceptable appellate brief, even after receiving an additional opportunity to correct the original brief's deficiencies.[5]

■ Respondent's consistent position that a response was not required when the defendants filed a motion for summary judgment is not only erroneous but is particularly egregious. Respondent's assertion that the version of Rule 74.04 in effect at the time did not mandate a response in all situations is incorrect. The rule and case precedent have always been clear that if any allegations in the motion were not sufficiently refuted in a response, or if the response failed to refute those allegations in conformity with the rule, that said allegations would be deemed true.[6]

The entire purpose of a defendant filing a summary judgment motion is to claim that no material facts are in dispute and that the defendant is entitled to a judgement as a matter of law.[7] The summary judgment motion from MCM was premised on their claim that at the time of the accident Daniels was not acting within the scope of his employment—a fact Respondent could have easily disputed had he utilized either Daniels's affidavit or his subsequently acquired deposition. Failure to dispute these allegations constitutes an admission and a concession that the defendant is entitled to a judgment in its favor.[8] Every practicing attorney should understand the consequences of failing to respond to such a motion, especially an attorney who has been in practice for thirty-nine years.

■ With regard to the fee arrangement, there is no dispute that the contingency fee agreement was not memorialized in writing in violation of Rule 4–1.5. The purpose of this rule is to ensure mutual understanding between the attorney and

---

**5.** See *In re Stanley L. Wiles,* 107 S.W.3d 228 (Mo. banc 2003); *In re Donaho,* 98 S.W.3d 871 (Mo. banc 2003); *In re Snyder,* 35 S.W.3d 380 (Mo. banc 2000); *In re Charron,* 918 S.W.2d 257 (Mo. banc 1996).

**6.** *Johnston v. Sweany,* 68 S.W.3d 398, 402 (Mo. banc 2002).

**7.** Rule 74.04; *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 377 (Mo. banc 1993).

**8.** *Sweany,* 68 S.W.3d at 402; *ITT,* 854 S.W.2d at 382.

the client as to what fees will be charged for the agreed upon services. A simple memorization of these arrangements not only prevents fraud or abuse on the part of attorneys that can discredit the entire profession, but also assists with eliminating unnecessary or frivolous fee disputes raised by clients who are merely dissatisfied with the outcome of the services received. In short, like any other contractual relationship, the fee agreement protects both parties. The failure to comply with the rule is not a mere empty violation or a technicality as Respondent alleges just because no fee dispute actually ensued. The violation is grounds for discipline. The actual level of harm created by the acts or omissions of any attorney determines only the level of discipline imposed.[9]

■ Rule 4–8.4 prohibits an attorney from engaging in dishonest, fraudulent, or deceitful conduct.[10] The multiple and differing explanations Respondent provided to the Plaintiffs, the court and the DHP with regard to his failure to defend against the summary judgment motion and prepare an acceptable brief for the court of appeals supports the determination that he violated Rule 4–8.4(c).

## IV.

■ The fundamental purpose of an attorney disciplinary proceeding is to "protect the public and maintain the integrity of the legal profession."[11] It is proper to consider mitigating factors, including the attorney's previous record, when determining the appropriate discipline.[12]

■ The CDC seeks an order enforcing the DHP's recommendation that the Court disbar Respondent. "However, disbarment is reserved only for cases of severe misconduct where it is clear the attorney is not fit to continue in this profession."[13]

Respondent's misconduct constitutes violations of duties owed to clients and duties owed to the profession.[14] The American Bar Association's Standards for Imposing Lawyer Sanctions (1991) (ABA Standards) recommend disbarment under these categories when the lawyer has (a) failed to comprehend fundamental legal doctrines, (b) abandoned or failed to perform legal services, (c) deceived a client, or (d) engaged in misconduct with the intent to obtain a benefit; any of which causes serious injury or potentially serious injury to a client, the public, or the legal system.[15] Suspension, on the other hand, is recommended when a lawyer (a) knowingly fails to perform legal services, (b) knowingly engages in a practice that he or she is not competent to handle, (c) deceives a client, (d) engages in a pattern of neglect, or (e) violates a duty owed to the profession; the result of which causes injury or potential injury to a client, the public, or the legal system.[16]

**9.** *In re Stanley L. Wiles,* 107 S.W.3d 228, 229 (Mo. banc 2003).

**10.** *In re Mirabile,* 975 S.W.2d 936, 939 (Mo. banc 1998).

**11.** *In re Waldron,* 790 S.W.2d 456, 457 (Mo. banc 1990).

**12.** *In re Cupples,* 952 S.W.2d 226, 237 (Mo. banc 1997). See also *In re Harris,* 890 S.W.2d 299, 302 (Mo. banc 1994).

**13.** *In re Shunk,* 847 S.W.2d 789, 792 (Mo. banc 1993).

**14.** The American Bar Association's Standards for Imposing Lawyer Sanctions (1991), Rules 4.0 and 7.0.

**15.** ABA Standards, Rules 4.41, 4.51, 4.61 and 7.1.

**16.** ABA Standards, Rules 4.42, 4.52, 4.62 and 7.2. See also *In re Cupples,* 979 S.W.2d 932, 936 (Mo. banc 1998).

Respondent's actions demonstrate a pattern of neglect with prosecuting Plaintiffs' case that resulted in a potential injury to his clients and the legal profession. While this Court cannot say with one hundred percent certainty that Respondent's actions ultimately cost the Plaintiffs their claim, what the Court can determine is that Respondent's actions potentially injured the Plaintiffs by effectively eliminating their opportunity to proceed with a potentially valid claim against MCM. Respondent's neglectful actions coupled with his non-credible attempt to explain those actions to his clients, the court and the DHP also potentially injure the credibility of the profession as a whole.

It should be noted that Respondent's conduct does not have to be intentional when it comes to deceiving a client in order to warrant discipline.[17] While Respondent may not have intentionally set out to abuse the professional relationship between himself and his clients, Respondent committed misconduct when attempting to shroud his substandard actions with the varying explanations that he proffered. Further complicating his position has been the steadfast refusal to recognize his breach of ethical principles, even when given the opportunity to do so during this Court's oral argument.[18]

## V.

When determining the level of discipline to impose, the Court considers Respondent's actions, the mitigating factor that Respondent has practiced law in this state for thirty-nine years with only one minor disciplinary action, and the propriety of sanctions under the Missouri rules and the ABA model rules.[19] Respondent is ordered suspended from the practice of law indefinitely with leave to apply for reinstatement in one year. Prior to filing for reinstatement, Respondent must (1) obtain malpractice insurance in an amount no less than $250,000, subject to the CDC's approval of the policy; (2) must complete office management, civil procedure and ethical practice continuing legal education courses totaling 15 hours of CLE's of which at least 3 hours must be ethics credits; (3) must prepare and submit for CDC approval an office management plan; and (4) must retake and successfully pass the Multistate Professional Responsibility Examination.

WHITE, C.J., WOLFF, STITH, TEITELMAN, LIMBAUGH and RUSSELL, JJ., and GAERTNER, Sp.J., concur.

PRICE, J., not participating.

---

**17.** ABA Standards, Rule 7.2.

**18.** See *Snyder*, 35 S.W.3d at 385.

**19.** Respondent received a public reprimand in 2002 for violations of the rule on diligence, Rule 4–1.3.