**In re Edgar E. LIM, Respondent.**

**No. SC 87849.**

Supreme Court of Missouri,
En Banc.

Jan. 9, 2007.

Sharon K. Weedin, Office of Chief Disciplinary Counsel, Jefferson City, for Informant.

Austin L. Mitchell, Salem, Priscilla J. Lim, St. Louis, for Respondent.

RONNIE L. WHITE, Judge.

## I.

Respondent Edgar Lim obtained his Missouri license to practice law in 1975. The Office of Chief Disciplinary Counsel (CDC) alleges multiple violations of the rules of professional conduct in connection with Respondent's representation of Ganesh and Padma Krishnamurthy. The Court finds that Respondent violated Rule 4–1.16(d) by withholding property to which his client was entitled upon termination of the representation. A public reprimand is ordered.

## II.

The facts are undisputed. Respondent was admitted to the bar in 1975 and has practiced immigration law throughout his career. His disciplinary record contains an admonition in 2003 for violation of Rules 4–1.3 (diligence) and 4–3.1 (frivolous claim). At the time of the disciplinary hearing on the present matter, Respondent maintained a part-time practice in St. Louis.

In 1994, the Krishnamurthys hired Respondent to assist them to obtain a work visa and labor certification enabling Mr. Krishnamurthy to work in the United States and a residency permit for Mrs. Krishnamurthy. Respondent requested a fee of $4500. Respondent could not produce a written fee agreement but testified that one existed providing for late charges of $20 per month plus 9% per year. The Krishnamurthys paid Respondent $1000.

In October 1997, Respondent terminated representation and sent the Krishnamurthys a letter dated November 3 advising them that "once we are paid . . . , we will release your labor certification which is still *our* property until you pay for it" (emphasis in original). In December 2002, Respondent filed a collection action against the Krishnamurthys. In January, Respondent instructed his daughter and law partner to send a letter, on Lim & Lim letterhead, to the Krishnamurthys, threatening to report them to the United States Immigration and Naturalization Service (INS) if they failed to pay immediately. In February 2004, Respondent sent a letter to the INS reporting that the Krishnamurthys "lack the good moral character needed to obtain immigration benefits" because they had "lied and deceived our office" and had an outstanding balance of "over $7000." Respondent asked the INS to place the letter in the Krishnamurthys' file "to prevent them from obtaining any further immigration benefits."

The Krishnamurthys hired Andrew Neill to represent them in Respondent's collection action. Mr. Neill reported Respondent's conduct to the CDC in September 2004, and the CDC filed an *information* against Respondent's license. The CDC alleged violations of Rules 4–1.16(d) (withholding client property), 4–1.6(a) (disclosure of confidential information without consent), 4–1.9 (use of information to detriment of former client), and 4–7.5 (implying partnership when none exists). Following a hearing in March 2006, the Disciplinary Hearing Panel (DHP) recommended that Respondent be suspended for six months.

The CDC now seeks affirmation of the DHP's recommendations. This Court has jurisdiction because it has the inherent authority to regulate the practice of law.[1]

### III.

The findings of fact, conclusions of law, and the recommendations from the DHP are advisory.[2] This Court reviews the evidence *de novo* and draws its own conclusions of law.[3] Professional misconduct must be proven by a preponderance of the evidence before discipline will be imposed.[4]

Rule 4–1.16(d) requires in pertinent part that "upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled . . ." The Court agrees with the CDC that Respondent's November 3 letter to Mr. Krishnamurthy is a bald effort to coerce payment by withholding the labor certification—a document to which the client was entitled-in violation of Rule 4–1.16(d).

▇▇▇▇ The remaining alleged violations arise from Respondent's letter to the INS. While such vindictive behavior casts shame on the entire profession, the Court is not persuaded that the expression of Respondent's personal opinion regarding the Krishnamurthys' character constitutes a disclosure of confidential information under the rules. The cases cited by the CDC are distinguishable in that they involve situations where attorneys divulged substantive facts learned in the scope of representation as opposed to subjective opinions formed thereafter.[5] Further, the

---

1. *In re Mid–America Living Trust Associates, Inc.*, 927 S.W.2d 855, 856 (Mo. banc 1996).

2. *In re Snyder*, 35 S.W.3d 380, 382 (Mo. banc 2000).

3. *Id.*

4. *Id.*

5. In those cases, lawyers attempting to recover their fees threatened to report information learned in the scope of representation such as a client's adultery (*Lindenbaum v. State Bar*, 26 Cal.2d 565, 160 P.2d 9 (1945)) and clients'

outstanding debt was a matter of public record by virtue of the collection action. Lastly, the law firm of Lim & Lim need not have registered with the secretary of state in order to be a valid partnership.[6] The Court does not find a preponderance of evidence establishing violations of Rules 4-1.6(a), 4-1.9, or 4-7.5.

## IV.

■■■ The fundamental purpose of an attorney disciplinary proceeding is to "protect the public and maintain the integrity of the legal profession."[7] The CDC cites Respondent's letter to the INS as the primary basis for suspension under American Bar Association Standard Rule 4.22, which recommends suspension where a lawyer knowingly reveals confidential client information. Having found no basis for suspension in Respondent's letter to the INS, the Court must determine appropriate discipline for Respondent's single violation of Rule 4-1.1.16(d) for withholding property to which a client is entitled upon termination of representation. It is proper to consider mitigating factors, including the attorney's previous record, when determining the appropriate discipline.[8] Respondent has practiced law in this state for thirty-one years with only one minor prior disciplinary action. Reprimand is appropriate where an attorney's breach does not involve dishonest, fraudulent, or deceitful conduct.[9] While Respondent's overall comportment was certainly unprofessional and his letter to the INS reprehensible, his conduct does not rise to the level of fraud or deceit so as to warrant suspension. The Court orders a public reprimand for Respondent's violation of Rule 4-1.16(d).

WOLFF, C.J., TEITELMAN and LIMBAUGH,.JJ., concur; LAURA DENVIR STITH, J., concurs in part and dissents in part in separate opinion filed; PRICE and RUSSELL, JJ., concur in opinion of LAURA DENVIR STITH, J.

LAURA DENVIR STITH, Judge concurring in part and dissenting in part.

I respectfully concur in part and dissent in part.

I agree with the principal opinion that Mr. Lim did not violate this Court's disciplinary rules in not registering his law partnership with the secretary of state. I also agree that his inappropriate conduct in attempting to coerce payment from a former client by withholding the labor certification was a violation of Rule 4-1.16(d) and that, were this his only rule violation, a public reprimand might be a sufficient sanction for his conduct in light of the mitigating factors noted, including his nearly unblemished record.

I disagree with the principal opinion, however, that Mr. Lim's reprehensible and vindictive behavior in reporting his clients to the INS is not a rule violation. I believe that, when added to his coercive attempt to collect a questionable amount of fees[1] from his former client, Mr. Lim's conduct warranted suspension.

misrepresentations to the Internal Revenue Service (*In re Boelter*, 139 Wash.2d 81, 985 P.2d 328 (1999) and *In re Aydelotte*, 206 A.D. 93, 200 N.Y.S. 637 (1923)).

6. Section 358.060, RSMo 2000.

7. *In re Waldron*, 790 S.W.2d 456, 457 (Mo. banc 1990).

8. *In re Cupples*, 952 S.W.2d 226, 237 (Mo. banc 1997).

9. *Id.*

1. The Krishnamurthys paid Mr. Lim $1,000 when he was hired. It is unclear that he was entitled to more. Mr. Lim claims that the Krishnamurthys agreed to pay him $4,500 to obtain a labor certification for Mr. Krishna-

While Mr. Lim suggests that it was his obligation to report the alleged "amoral conduct" of his former client to the INS, the only "amoral conduct" that Mr. Lim identifies is Mr. Krishnamurthy's failure to pay Mr. Lim's bill. Further, the January 26, 2004, letter sent by Priscilla Lim, Mr. Lim's daughter and partner, to the Krishnamurthys says that if they pay the Lims' bill of $6,759.00 then the Lims will *not* report the Krishnamurthys' "amoral character" to the INS. This calls into question whether the Lims truly believed they had a duty to report or truly believed the conduct to be amoral.

Rule 4–1.6 provides that "[a] lawyer shall not reveal information relating to the representation of a client." **Rule 4–1.6(a).** Comments to Rule 4–1.6 clarify that the term "relating to representation" has broad application. It "imposes confidentiality on information relating to the representation even if it is acquired before or after the relationship existed." **Rule 4–1.6 comments.** The comment specifically notes the greater breadth of the phrase "relating to representation" when compared to the language under the former version of the rule, stating that, unlike "[u]nder the Code, ... DR [Rule] 4–1.6 does not require the client to indicate information that is to be confidential, or permit the lawyer to speculate whether particular information might be embarrassing or detrimental." *Id.* Any information "relating to representation" must be kept confidential unless an exception applies.

A lawyer may reveal otherwise confidential information only (1) if the client consents, **Rule 4–1.6(a);** (2) to prevent the client from committing a crime likely to result in death or substantial bodily harm, **Rule 4–1.6(b)(1);** or (3) "to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client." Rule 4–1.6(b)(2). These provisions are limited in that they permit "disclosure only to the extent the lawyer reasonably believes the disclosure is necessary to accomplish one of the purposes specified." **ABA Rule 1.6, comment 12.**

Rule 4–1.9 provides that it is a conflict of interest for a lawyer who has formerly represented a client to "use information relating to the representation to the disadvantage of the former client" *unless* the information may be revealed pursuant to Rule 4–1.6 or because the information has

---

murthy to work in the United States and that his contract entitled him to interest of 9% per year and $20 per month in late fees. Mr. Lim could produce no written contract reflecting such an agreement, although he said he normally obtained one. Further, Mr. Lim's letter of November 3, 1997, suggests that Mr. Krishnamurthy only owed $2,441.11 at that time and that all work had been done to obtain the labor certificate by that point. This calls into question the claim of a $4,500 fee and the basis for the later claim to the INS that Mr. Krishnamurthy owed Mr. Lim almost $7,000, including interest and late fees. Moreover, Mr. Lim's claims are made despite the facts that Mr. Lim never provided the labor certifi-

cation to Mr. Krishnamurthy and that Mr. Lim acknowledged that the labor certification would only have been valid for an employer that he knew Mr. Krishnamurthy had quit working for just a few months after Mr. Lim was hired. The record does not reflect what amount of time Mr. Lim spent attempting to obtain the certification or whether any time was spent after he already knew that Mr. Krishnamurthy could not use the labor certification. Because the disciplinary hearing panel did not find the fees charged to be a basis for discipline, I do not pursue it further here except to the extent that it provides additional insight into Mr. Lim's character and motivation in his dealing with the Krishnamurthys.

become generally known. The principal opinion says the exceptions to non-disclosure set out in Rule 4–1.9 apply because the information became a matter of public record in the collection suit and because the information disclosed did not relate to "substantive facts learned in the scope of representation." I disagree that an exception to the confidentiality requirements of Rules 4–1.6 and 4–1.9 applies.

Although the collection suit against the Krishnamurthys may have publicized the fact that Mr. Lim claimed they owed him money, it did not make "generally known" any information about the Krishnamurthys' alleged lying or deception or bad moral character. Yet, the Lims' February 18, 2004, letter to the INS did not merely inform the agency of the collection action against the Krishnamurthys. It also asserted that they "lack the good moral character needed to obtain immigration benefits. They have lied and deceived our office" and asked that the INS "place this letter in their file to prevent them from obtaining any further immigration benefits." This goes far beyond merely reporting an unpaid debt. The Lims' disclosure of such information to the INS, which was specifically intended to disadvantage the Krishnamurthys, violated Rule 4–1.9's admonition that a lawyer not "use information relating to the representation to the disadvantage of the former client."

Further, the Lims' allegations of lying and deception on the part of the Krishnamurthys are admittedly based on statements relating to money allegedly owed to Mr. Lim for his representation, statements made by the Krishnamurthys both during and after the Lims' representation. Such statements inherently "relate to" Mr. Lim's representation of the Krishnamurthys. Even as to those alleged lies made *after* the Lims' representation of the Krishnamurthys, the rules impose on the Lims an obligation to keep confidential all information "relating to the representation even if it is acquired before or after the relationship existed." **Rule 4–1.6 comments.** But, the Lims admit that at least some of the alleged multiple promises to pay by Mr. Krishnamurthy were made during the course of the representation and that the alleged repeated failure to keep these and later promises is what allegedly led to Mr. Lim's withdrawal from Mr. Krishnamurthy's representation.

Finally, the fact that the information revealed concerned the alleged nonpayment by, and amoral and lying character of, the Krishnamurthys does not affect the Lims' obligation not to undertake conduct detrimental to their former client and not to reveal information relating to the Krishnamurthys. Nothing in Rule 4–1.6 requires that in order for information relating to representation to be confidential it must relate to the "substantive facts" of the representation, as the principal opinion suggests. All information that relates to the representation of the client must be kept confidential under Rule 4–1.6.

Mr. Lim's decision to send a letter to the INS condemning the moral character of the Krishnamurthys with the stated intent that it prevent them from "obtaining any further immigration benefits" is comparable to a letter sent by a tax attorney to the IRS informing the agency that a former client, who had been seeking certain relief or shelter from tax liability at the time of the representation, is a person of low moral character and failed to pay the attorney for his services and, therefore, should not get a favorable settlement from or should be audited by the IRS. Under the approach taken in the principal opinion, the outcome would be the same in both cases. But just as a tax attorney should never attempt to goad the IRS into auditing or denying beneficial treatment to former

clients because they have failed to pay the attorney, neither should an immigration attorney try to persuade the INS to deport or deny benefits to former clients because the attorney has not been paid for his services. In either situation, the conduct of the attorney is reprehensible, and the attorney should be disciplined accordingly.

I also agree with the disciplinary hearing panel that a more severe sanction for this conduct is warranted than might otherwise be the case because Mr. Lim refuses to express remorse for his conduct or even to acknowledge its vindictiveness and unprofessional nature. He went so far as to tell the disciplinary hearing panel that "If I had it to do all over again, I possibly would do the exact same thing." Further, in this Court, Mr. Lim indicated that he still believed his conduct toward the Krishnamurthys was appropriate.

In these circumstances, I agree with the disciplinary hearing panel's recommendation that Mr. Lim's license to practice law should be suspended with leave to reapply after six months.