**In re Brian ZINK, Respondent.**

**No. SC 89623.**

Supreme Court of Missouri,
En Banc.

Jan. 27, 2009.

As Modified March 31, 2009.

Alan Pratzel, Shannon L. Briesacher, Office of Chief Disciplinary Counsel, Jefferson City, for Informant.

Paul J. D'Agrosa, Law Offices of Wolff & D'Agrosa, Clayton, for respondent.

DISCIPLINARY PROCEEDING

ZEL M. FISCHER, Judge.

The Office of Disciplinary Counsel ("OCDC"), the disciplinary hearing panel, Brian E. Zink, and this Court all agree that Zink's conduct through the course of his representation of Mary Hart and the subsequent federal investigation constitute misconduct and that he should be subject to discipline. After a hearing, the disciplinary panel recommended a retroactive suspension to coincide with a deferred prosecution agreement that Zink indepen-

dently reached with the United States attorney's office. This Court rejects that recommendation and indefinitely suspends Zink's license with leave to reapply in six months.[1]

## I. Factual Background

On or about October 1, 1993, Zink was licensed to practice law in the State of Missouri. Zink has no previous disciplinary history, and his license is currently in good standing.

### A. Improper Client Relationship

In May 2006, Mary Hart was charged with three counts of felony forgery. She came to the law firm that previously represented her in unrelated matters. Brian Zink was an associate in the law firm and was assigned to represent her.

Matthew Thornhill, St. Charles County assistant prosecutor, was assigned to handle the State's case against Hart. Thornhill initially told Zink that his recommendation for the case was six years imprisonment. Thornhill did not intend to recommend probation, but if Hart were to be sentenced to probation, his recommendation would be five years probation, including 60 days shock treatment.

Zink sought to negotiate a more favorable recommendation from Thornhill. Over the course of negotiations, Zink told Thornhill that Hart was the godchild of retired professional football player Terry Bradshaw. Thornhill disbelieved Zink, but told him he would reconsider his recommendation if Zink could produce a baseball with Bradshaw's autograph. Zink and

Thornhill also discussed Hart's cooperation with a drug task force as a factor in lowering the recommendation.

After this conversation, Zink told the managing partner under whom he was working that he could get Hart's charges reduced if Zink produced the signed baseball. Zink would later be recorded by the FBI telling Hart that he could get the felonies "taken care of" if she produced a signed baseball. Hart subsequently delivered a baseball purportedly autographed by Bradshaw, as well as a football and trading card. Zink informed Thornhill that he had the memorabilia, but did not deliver the memorabilia to him. When Zink informed Thornhill that he had obtained the memorabilia, Thornhill was shocked and told Zink that he did not want it. The charges against Hart, however, were later reduced to misdemeanors after this conversation. The impetus for this reduction is not clear.

### B. FBI Investigation

In July 2006, the FBI received information that Zink told Hart that the prosecuting attorney had agreed to accept sports memorabilia in exchange for reducing her charges to misdemeanors.

During an August 31, 2006, interview, Zink made false and misleading statements to the FBI. These statements included the claim that obtaining the baseball was only a joke. Zink made similar false and misleading statements in a later interview with the United States attorney's office.

1. Under Rule 5.28, if an applicant for reinstatement is suspended indefinitely with leave to reapply in a period of six months or less and is not on probation, the license shall be reinstated as a matter of course 30 days after the application for reinstatement is referred to the chief disciplinary counsel for report and recommendation. This rule further provides that if, within that 30–day period, the chief disciplinary counsel files a motion to respond to the application for reinstatement, the license shall not issue and the matter shall proceed in the normal manner.

After Zink was confronted with a taped conversation in which he told Hart that he could get the felonies "taken care of" if she produced the memorabilia, he admitted to the FBI and the United States attorney's office that he had made false and misleading statements during the interviews.

To avoid prosecution, Zink entered into a diversion agreement with the United States attorney's office. Terms of the diversion included a voluntary abstention from practicing law for one year. Zink completed the terms of the diversion and abstained from practicing law from June 25, 2007, through June 26, 2008. If Zink had failed to complete the diversion agreement, he would have been subject to prosecution.

## C. Disciplinary Panel Hearing and Recommendation

On or about October 3, 2007, the OCDC filed an information against Zink alleging that:

(1) Zink was guilty of professional misconduct under Rule 4–8.4(a) by violating Rule 4–1.4 in that he failed to tell Hart of the limitations on his conduct when he knew she expected assistance not permitted by the rules of professional conduct;

(2) Zink violated Rule 4–3.5 by seeking to influence an official by means prohibited by law;

(3) Zink violated Rule 4–4.1 in making untruthful statements of material fact during his interviews with the FBI and United States Attorney's Office;

(4) Zink violated Rule 4–8.4(c) by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation when he made untruthful statements of material fact to the FBI and United States Attorney's Office;

(5) Zink violated Rule 4–8.4(d) when he engaged in conduct prejudicial to the administration of justice when he attempted to reduce Hart's charges in exchange for sports memorabilia and;

(6) Zink violated Rule 4–8.4(e) when he told Hart that he could obtain a reduction on her felony charges in exchange for the sports memorabilia.

A hearing was held before the disciplinary hearing panel on June 26, 2008. The panel found that all of the charges against Zink were established by a preponderance of the evidence except for the alleged violation of Rule 4–3.5, seeking to influence an official by means prohibited by law, and Rule 4–8.4(d), engaging in conduct prejudicial to the administration of justice. The panel recommended that Zink be retroactively suspended from the practice of law for a period of 12 months to commence June 25, 2007, and to end June 26, 2008. This retroactive suspension coincided with the time period that Zink abstained from practice pursuant to his pretrial diversion agreement with the United States attorney's office. The panel also recommended that Zink complete six hours of ethics CLE and that Zink comply with all conditions of Rule 5.28 if he applies for reinstatement.

On or about September 25, 2008, pursuant to Rule 5.19, OCDC rejected the panel's decision and filed the complete record before this Court.

## II. Standard of Review

The findings of fact and conclusions of law of the disciplinary hearing panel are advisory. *In re Belz*, 258 S.W.3d 38, 41 (Mo. banc 2008). "'This Court [in a disciplinary proceeding] reviews the evidence *de novo*, independently determining all issues pertaining to credibility of witnesses and the weight of the evidence, and draws its own conclusions of law.'" *Id.* (quoting *In re Snyder*, 35 S.W.3d 380 (Mo.

banc 2000)). Stated more plainly, this Court is free to reject, wholly or in part, the recommendation of the disciplinary hearing panel. *In re Lim*, 210 S.W.3d 199, 201 (Mo. banc 2007). For purposes of this case, this Court finds the facts in accord with the disciplinary hearing panel's findings of fact.

## III. Discussion

 The OCDC, the disciplinary hearing panel, and Zink all agree that his actions constituted misconduct that violated Rules 4–1.4(a), 4–4.1, 4–8.4(c), and 4–8.4(e) and that he should be subject to discipline. The disciplinary hearing panel recommends and Zink requests that discipline come in the form of a retroactive suspension. This Court rejects the retroactive suspension because it fails to properly address the egregiousness of Zink's conduct and fails to adequately consider this Court's authority to regulate the practice of law.

Preliminarily, the Court notes that Zink's discipline is appropriately harsher than Thornhill's public reprimand because Zink intentionally lied to federal agents and the United States attorney's office in the course of their investigation.

 This Court has the inherent authority to regulate the practice of law. *In re Mid–America Living Trust Associates, Inc.*, 927 S.W.2d 855, 856 (Mo. banc 1996). When attorney discipline is administered, it is administered by this Court. *Id.* The fundamental purpose of attorney discipline is to protect the public and maintain the integrity of the legal profession. *Lim*, 210 S.W.3d at 202.

Zink's diversion agreement was an independent agreement between Zink and the United States attorney's office. By completing the diversion agreement, Zink received the benefit of his bargain—Zink would not be prosecuted for making false and misleading statements. Zink's agreement was made without consultation of this Court or the OCDC, and that agreement was binding only between Zink and the United States attorney's office. To hold otherwise would invade this Court's inherent authority to administer attorney discipline.[2]

This does not mean that the diversion agreement was not considered when this Court concluded that a six month suspension was appropriate. *Lim*, 210 S.W.3d at 202 (When determining the appropriate discipline, it is proper to consider all mitigating factors). This Court considered the diversion agreement as well as the OCDC's position in determining the appropriate discipline.

Zink admitted that he made false and misleading statements to the FBI and the United States attorney's office only after being confronted with the taped conversations. This conduct clearly warrants discipline, and the recommended retrospective discipline would be akin to imposing no discipline or, as argued by the OCDC, giving credit for "time served." Zink abstained from the practice of law not because this Court ordered a disciplinary sanction, but because he voluntarily agreed to do so as part of his agreement in the criminal matter. The diversion agreement and this disciplinary matter are unrelated because the diversion agreement did not seek to address the ethical implications of Zink's conduct.

---

**2.** A letter from the OCDC to Zink's attorney, dated June 15, 2007, makes explicitly clear that, "[t]o the extent that the conduct involves a violation of the rules of Professional Con-

duct, only the Missouri Supreme Court can determine the appropriate discipline, if any, which should be imposed on Mr. Zink's law license."

## IV. Conclusion

For the reasons set forth above, Zink's license to practice law in the State of Missouri is indefinitely suspended with leave to reapply in six months.

All concur.