

# SUPREME COURT OF MISSOURI
## en banc

| | |
|---|---|
| IN RE: | ) |
| | ) |
| NATHAN J. FORCK, | ) |
| | ) |
| | )     No. SC88961 |
| | ) |
| Respondent. | ) |

ORIGINAL DISCIPLINARY PROCEEDING

*Opinion issued February 4, 2014*

The Office of Chief Disciplinary Counsel (hereinafter, "OCDC") seeks to discipline Nathan J. Forck's (hereinafter, "Forck") law license for alleged multiple violations of the rules of professional conduct that occurred while Forck was on probation. This Court finds that Forck committed violations of Rule 4-1.1, Competence, in connection with the preparation of estate planning documents and the dispensing of advice regarding Medicaid eligibility, and Rule 4-1.5, Fees, by charging an excessive fee for estate planning services and representation concerning Medicaid eligibility. This Court orders Forck's term and conditions of probation be changed and that the stay of his previously imposed suspension remain in effect.

**Factual and Procedural History**

Forck was admitted to The Missouri Bar in April 2006 pursuant to a monitoring agreement entered into between the Missouri Board of Law Examiners (hereinafter, "the

Board"), Forck, and the OCDC. A monitoring agreement is executed when the Board has concerns about an applicant based upon the Board's character and fitness investigation but determines it is appropriate to admit an applicant to the practice of law so long as the applicant is monitored for some initial period of time by the OCDC. Here, the Board was concerned with Forck's excessive alcohol use. Forck was charged with three separate alcohol-related offenses prior to admission into the bar. After his third offense, Forck received out-patient treatment for alcoholism.

The monitoring agreement set forth several conditions Forck agreed to follow upon admission to the bar. These conditions included Forck's abstinence from alcohol and regular attendance at a support or therapy group, such as Alcoholics Anonymous, with verification of attendance provided by Forck to an attorney monitor. Any violation of the terms of the monitoring agreement would be deemed a violation of Rule 4-8.4(d), Misconduct, and subject Forck to disciplinary action.

On May 18, 2007, Forck was drinking at a bar, became embroiled in an altercation, and was arrested for third-degree assault.[1] As a result of Forck's alcohol use, failure to send verification of his attendance at support group meetings, and the failure to notify the OCDC of his arrest, the OCDC filed an information charging Forck with violations of Rule 4-8.4(d) for conduct prejudicial to the administration of justice and Rule 4-8.1(b) for failing to report his conduct to the OCDC.

---

[1] The charges were dismissed October 18, 2007.

The parties submitted a joint stipulation to this Court requesting that the appropriate discipline to impose on Forck would be an indefinite suspension with leave to apply for reinstatement in six months, with the suspension stayed, and Forck placed on probation for two years. On December 7, 2007, this Court accepted the OCDC's recommendation. Forck also agreed to comply with several probation conditions, including: the appointment of a probation monitor; quarterly reporting responsibilities; compliance with the rules of professional conduct; abstinence from the use of alcohol and other controlled substances; participation in treatment and support group programs; submission to random drug testing; and cooperation with an attorney mentor. Forck's probation also provided that should the OCDC receive a complaint during Forck's term of probation, the term would be extended until such charge was investigated and the OCDC made a determination regarding its disposition.

Forck's first employment after admission into the bar was with Joseph Yungwirth (hereinafter, "Yungwirth"), an attorney with a large elder law and estate planning practice. Yungwirth employed Carmen Munford (hereinafter, "Munford"), a former state benefit specialist, as a member of his support staff. Forck left Yungwirth's practice after approximately eighteen months. From early 2008 until March 2009, Forck worked as a general practitioner with another attorney.

3

In early 2009, Yungwirth contacted Forck about taking over Yungwirth's practice.[2] Forck and Yungwirth negotiated a verbal agreement to transfer the practice, with Forck agreeing to retain Munford and other support staff. Forck did not have personal experience or expertise in the practice of elder law or Medicaid litigation when taking over Yungwirth's practice. Forck relied upon the knowledge he gained from Yungwirth, Munford, and the support staff he retained to represent clients and administer paperwork. Despite this lack of experience, Forck promoted himself and his firm as experienced in elder law, even conducting seminars targeted to people who had questions regarding Medicaid issues.

On January 13, 2010, Forck filed a motion for this Court to issue an order of successful completion of probation. In response, the OCDC stated it received two complaints regarding Forck and Yungwirth's firm. The OCDC indicated the investigation was ongoing and no factual determination had been made at the time Forck filed his motion. As part of its investigation, the OCDC requested Forck produce several documents, including certain bank records. Forck failed to produce these records. The OCDC issued a subpoena to a bank for the production of records pertaining to an account over which Forck had signatory authority. In response, Forck filed a motion to quash the subpoena. This Court overruled Forck's motion and permitted the OCDC to continue its investigation. This Court also overruled Forck's motion regarding his release from probation because the OCDC's investigation extended the term of his probation.

---

[2] As of April 1, 2009, Yungwirth ceased practicing law due to physical and mental infirmities and on August 23, 2010, received an Order of Interim Suspension from this Court issued pursuant to Rule 5.23(b) (Case No. SC91102).

On December 23, 2010, Forck filed a second motion for this Court to issue an order of successful completion of probation. The OCDC opposed the motion, stating it received two additional complaints regarding Forck's practice since his first motion for release filed in January. The OCDC's response also supported a finding that the delay in completing its investigation was due, in large part, to Forck's failure to provide requested information.[3] This Court overruled Forck's motion.

The OCDC completed its investigation, which is the basis for the current disciplinary proceeding. The OCDC and Forck have stipulated that Forck committed three counts of professional misconduct.

With respect to Count I, James and Kathy Poletti retained Forck in August 2009 to prepare estate planning documents so they could avoid spending their resources on Kathy Poletti's nursing home expenses. These documents were intended to replace ones previously prepared by a different law firm. The Polettis initially paid Forck $8,030 for long-term care planning and an application for Medicaid benefits. By the time Forck completed preparing the necessary documents, Mrs. Poletti was no longer competent to execute them.

---

[3] The dissent repeatedly refers to Forck's actions during the investigation of the current disciplinary proceeding as additional evidence that his misconduct warrants the imposition of the stayed suspension. It should be noted that the OCDC did not charge Forck with violating Rule 4-8.1 or any other rule for initially contesting the charges brought against him or for failing to cooperate with the OCDC's investigation. *See e.g.*, *In re Hardge-Harris*, 845 S.W.2d 557, 560 (Mo. banc 1993) (issuing public reprimand after OCDC charged attorney with misconduct for failing to cooperate with its investigation); *In re Harris*, 890 S.W.2d 299, 302 (Mo. banc 1994) (same).

Mrs. Poletti passed away on February 20, 2010. The documents submitted to the probate court were the ones drafted by the former law firm. Although Mrs. Poletti's assets were small enough to be disposed of through the short-form probate procedure, Forck advised Mr. Poletti that a full probate estate needed to be opened so the Medicaid application for her nursing home expenses could proceed. Despite the Polettis having already paid Forck for estate planning and Medicaid application services, Forck informed Mr. Poletti that an additional fee of $2,000 would be required to open the estate. Mr. Poletti paid the additional $2,000. When the probate estate was opened in December 2010, it was discovered that Forck did not complete Mrs. Poletti's Medicaid application. Mr. Poletti ultimately paid $16,000 in nursing home expenses. Mr. Poletti later discharged Forck and retained new counsel to process the administration of the probate estate.

With respect to Count II, Larry Charles and Patricia Merrill, children of Mildred Charles (hereinafter, "Charles"), met with Yungwirth twice in early 2009 to discuss preparing a trust and other estate documents that would allow Charles' assets to be sheltered from payment to nursing homes. Charles was a patient of a care facility at the time. When the children went to an appointment in April 2009 to meet with Yungwirth, they were informed that he was no longer practicing law and that Forck now represented them. Forck and Munford advised the children it was likely they would be able to protect Charles' property so that she could immediately apply for Medicaid benefits for her nursing home expenses. At the conclusion of the meeting, the children paid $8,000 to the firm.

6

Forck prepared a number of documents for Charles' signature, including an affidavit stating that all shares of the family's farm were owned by Larry Charles, and a quit claim deed from Charles to Larry Charles quit-claiming all real estate to him. These documents were executed in April 2009. Forck sent an additional directive to Charles in September 2009 regarding the re-titling of property to remove her name from her assets if she had already not done so. Thereafter, Forck filed an application with the State for immediate Medicaid benefits. Despite the application being incomplete and inaccurate, Charles was awarded Medicaid benefits.

In late 2009, Charles and her children discharged Forck and retained new counsel. Upon review of Charles' file, new counsel discovered that several transfers of property were reported inaccurately or were of questionable validity for Medicaid purposes. New counsel reported this matter to the Department of Social Services, which prompted an investigation into Charles' award of benefits. In August 2011, the State concluded Charles was ineligible for Medicaid benefits because of the inappropriate transfers and advised that the uncompensated amount before Medicaid eligibility was $518, 393.43.

Count III involves Bernadine Anderson (hereinafter, "Anderson"), another client initially represented by Yungwirth. In October 2007, Anderson executed the Anderson Family Irrevocable Trust Agreement with Yungwirth, Munford, and another Yungwirth employee named as trustees.

Between April 1, 2009, and August 2010, Munford, acting in her capacity as trustee of the irrevocable trust, made payments from the trust to Forck for legal work in the amount of $5,975. Forck was unable to document what work justified this fee and

7

failed to provide Anderson with an itemized statement of his work. Anderson discharged Forck in August 2010, revoked a durable power of attorney, and directed her file to be sent to another attorney.

The parties stipulate that Forck committed five violations pertaining to his representation of the Polettis, Charles, and Anderson. Forck admits he violated Rule 4-1.1, Competence, with respect to his representation of the Polettis and Charles. Forck further admits he violated Rule 4-1.5, Fees, with respect to all three clients.

Forck and the OCDC jointly recommend that this Court extend Forck's probation for a minimum term of one year, with additional terms and conditions to be imposed beyond those originally ordered by this Court in 2007. The parties assert there has been a change of circumstances warranting probation being extended, rather than the imposition of the stayed suspension. Forck states he has maintained his sobriety since 2007, and the original conditions of probation no longer apply. The parties also agree that the facts related to the new stipulated violations are unrelated to Forck's disciplinary history for alcohol abuse, which was the reason he was placed on probation originally.

**Standard of Review**

This Court has the inherent authority to regulate the practice of law and administer attorney discipline. *In re Zink*, 278 S.W.3d 166, 169 (Mo. banc 2009). The purpose of imposing discipline is not to punish the attorney, but to protect the public and maintain the integrity of the legal profession. *In re Stewart*, 342 S.W.3d 307, 308 (Mo. banc 2011). "Those twin purposes may be achieved both directly, by removing a person from the practice of law, and indirectly, by imposing a sanction which serves to deter other

8

members of the Bar from engaging in similar conduct." *In re Kazanas*, 96 S.W.3d 803, 807-08 (Mo. banc 2003).

## Analysis

Forck admits he violated Rule 4-1.1, Competence, and Rule 4-1.5, Fees, with respect to three of his clients. It is this Court's duty to determine what discipline is appropriate to impose for these violations by reviewing similar past cases, the disciplinary rules, and the applicable ABA standards. *Stewart*, 342 S.W.3d at 310. When this Court finds an attorney has committed multiple acts of misconduct, "the ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among the violations." *In re Coleman*, 295 S.W.3d 857, 870 (Mo. banc 2009) (internal citations omitted).

Turning to the *ABA Standards for Imposing Lawyer Sanctions*, (1991 Ed.) this Court first examines the recommended range of discipline for a competence violation. "Suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client." *ABA Standard* 4.52. "Knowledge" is defined as "the conscious awareness of the nature of attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." *ABA Standards for Imposing Lawyer Sanctions* at 7. "Reprimand is generally appropriate when a lawyer: (a) demonstrates failure to understand relevant legal doctrines or procedures and causes injury or potential injury to a client; or (b) is negligent in determining whether he or she is competent to handle a legal matter and causes injury or potential injury to a client." *ABA Standard*

9

4.53. "Negligence" is defined as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." *ABA Standards for Imposing Lawyer Sanctions* at 7.

The ABA Standards contain similar recommendations for violations concerning the fees charged to a client, with the only difference between the sanctions being the attorney's state of mind at the time of the violation. "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system." *ABA Standard* 7.2. "Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of the duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system." *ABA Standard* 7.3.

Forck's misconduct arose out of negligence instead of an intention to violate the rules of professional conduct and take advantage of his clients. The record reflects that while Forck knowingly promoted himself and his firm as having expertise in elder law, estate planning, and Medicaid litigation, he did so only upon the misguided, and unfortunately, unprofessional practices he learned from Yungwirth, Munford, and the support staff he retained. Forck admits he was inexperienced and naively relied upon these persons due to their extensive governmental and paralegal experience in the elder law field when he committed the violations at issue here. Upon learning of the professional misconduct charges brought against him, Forck promptly discharged

10

Munford and the remaining support staff and now completes all of the legal work, including document preparation, himself.

The parties stipulate misconduct has occurred. After misconduct has been established, this Court may consider aggravating and mitigating circumstances when deciding what sanction to impose. *ABA Standard* 9.1. The record contains evidence of both circumstances.

With respect to aggravating circumstances, Forck's actions involved a pattern of misconduct resulting in multiple offenses regarding his procurement of legal fees that were excessive for the quality of the work done and the likelihood of success. Further, Forck's clients were vulnerable victims, consisting of primarily elderly clients concerned with how to maintain their assets while seeking care for a family member entering a nursing home. *ABA Standard* 9.22(c), (d), and (h).

With respect to mitigating circumstances, Forck was inexperienced in the practice of law when he committed these new violations, relying upon improper practices learned from Yungwirth, Munford, and his support staff. Since discharging Yungwirth's support staff, the OCDC has not received any new complaints regarding Forck's elder law practice. Forck expressed remorse for his actions and is making restitution to his harmed clients. Moreover, Forck agreed to subject himself to an extended term of probation, along with additional terms and conditions, should this Court determine probation is appropriate. *ABA Standard* 9.32(f), (k), and (l).

The parties contend that application of the ABA Standards and this Court's rules justify continuing Forck's term of probation because the circumstances and factors

11

connected with his earlier issues have changed substantially. An attorney is eligible for probation if the attorney: (1) is unlikely to harm the public during the probationary period and can be supervised adequately; (2) is able to perform legal services and practice law without causing the courts or profession to fall into disrepute; and (3) has not committed acts warranting disbarment. Rule 5.225(a)(2)(A-C). This Court must take into account the nature and circumstances of the attorney's misconduct and his or her history, character, and health status when placing him or her on probation and fashioning the conditions the attorney must abide by while on probation. Rule 5.225(b)(1).

All three eligibility requirements of Rule 5.225(a) have been demonstrated here. First, it is unlikely Forck will harm the public during his extended probationary period. Forck has maintained his sobriety since 2007, he has undertaken to improve his practice by discharging the support staff that offered misguided and erroneous advice, and he now completes all of his clients' legal tasks himself. Forck also forged a relationship with an attorney mentor who is well-respected in the elder law field, and that attorney agreed to monitor and supervise Forck professionally, as well as personally, to ensure Forck remains in compliance with the terms of his probation. Second, Forck's utilization of the services of the attorney mentor, attendance at additional professional education classes, and reporting requirements will remedy the prior misconduct and permit Forck to perform legal services and practice law in the future without causing the courts or profession to fall into disrepute. Finally, Forck has not committed any misconduct that warrants disbarment.

This Court determined probation was the appropriate discipline in *In re Wiles*, 107 S.W.3d 228 (Mo. banc 2003). There, the attorney had been admonished at least eleven times over a three-year period for violations of the rules pertaining to diligence, communication, safeguarding client property, and conduct prejudicial to the administration of justice in Missouri. *Id*. at 229. The attorney also had two prior admonitions and stipulated to misconduct that warranted a public censure in Kansas. *Id*. at 228. Likewise, in *In re Coleman*, this Court issued a suspension, which was stayed, subject to the completion of a one-year term of probation. *In re Coleman,* 295 S.W.3d at 859. There, the attorney had been admonished twice and publicly reprimanded once for a total of eight violations of the rules pertaining to communication, unreasonable fees, diligence, expediting litigation, and conduct prejudicial to the administration of justice. *Id*. This Court found the attorney committed five new violations of the rules that resulted in client harm, and that concerned the management of his IOLTA account, yet this Court permitted the attorney to serve a probationary term rather than be suspended. *Id*.

This Court adheres to a practice of applying progressive discipline when imposing sanctions on attorneys who commit misconduct. *See In re Ehler*, 319 S.W.3d 442, 445 (Mo. banc 2010). *ABA Standard 2.7* governs when probation may be imposed. The commentary to that standard provides that in the event an attorney violates the terms of his or her probation, this Court "*may extend the probation*, impose a more severe sanction, or otherwise handle the matter." Likewise, this Court's Rule 5.225(f)(2), which governs probation violations, provides:

> If the chief disciplinary counsel receives information during the period of probation that any condition may have been violated, the chief disciplinary counsel may file a motion in this Court specifying the alleged violation and seeking an order requiring the lawyer to show cause why the probation should not be revoked and further discipline imposed. *Further discipline may include additional probation*, suspension, or disbarment. The filing of the motion stays the expiration date of the period of probation until final action is taken on the motion. (Emphasis added).[4]

This Court recognizes Forck already has received the benefit of an extended probationary period, and it could impose the stayed suspension. The commentary to *ABA Standard 4.52*, advises that "a suspension should be imposed in cases where a lawyer engages in practice in areas in which a lawyer knows he or she is not competent." *ABA Standards for Imposing Lawyer Sanctions* at 34. Here, however, Forck did not engage in an area of practice that he knew he was not competent to undertake. Rather, he negligently utilized improper practice techniques learned from his previous senior partner. Moreover, the original imposition of probation arose from Forck's alcohol abuse and not fulfilling the terms of the monitoring agreement. These current violations are the first complaints that have resulted in client harm, and are less numerous than the violations in *Wiles* and *Coleman*, who both received probation.

The recommendation by the OCDC seeks to extend the terms of probation and add additional conditions, which, while not a suspension, does impose additional sanctions on Forck.[5] Moreover, by allowing Forck to remain on probation, he is provided an

---

[4] Although the dissent argues Forck's misconduct warrants the harsher sanction of suspension, this Court's extension of Forck's probation is undisputedly permitted pursuant to the guidelines provided by *ABA Standard 2.7* and Rule 5.225(f)(2).

[5] The dissent faults the OCDC for failing to seek any discipline for the new violations that occurred. However, the extended term of probation, with additional terms

14

opportunity to receive additional education, monitoring, and support that will improve his law practice and better serve and protect his clients in the future. Moreover, by permitting Forck to continuing practicing law ensures his harmed clients can be made whole through full restitution payments.

Therefore, after examining past decisions of this Court, the rules of professional conduct, and the ABA Standards, this Court finds Forck's conduct, which can be remedied by education and is unlikely to reoccur, warrants an extended term of probation, rather than revocation.[6] The conditions of Forck's probation include: the appointment of a probation monitor; filing of quarterly responsibility reports; attendance at the ethics school conducted by the OCDC and elder law continuing legal education programs; meetings and reporting to an attorney mentor regarding practice management; submission to periodic client trust account audits; commission of no other violations of the rules of professional conduct; and full restitution to his harmed clients.[7]

---

specifically tailored to address the misconduct related to Forck's elder law practice, effectively serve to impose discipline for these violations.

[6] The dissent states that extending Forck's probation will not protect the public or maintain the integrity of the legal profession because Forck has moved on from engaging in alcohol abuse to alcohol-related assault to incompetent representation of elderly clients and attorney-fee abuse. The record demonstrates that this Court's imposition of probation in 2007 was effective in protecting the public from the harms related to Forck's alcohol abuse. Forck has remained sober since being placed on probation and adhered to the terms of probation related to his alcohol abuse. Further, it must be stressed that Forck negligently, rather than knowingly, represented his clients and is making restitution for the excessive fees collected.

[7] Forck has agreed to pay James Poletti $9,000 in restitution, the Mildred Charles Family Trust $8,000, and the Bernadine Anderson Family Trust $5,000.

## Conclusion

This Court orders that Forck remain on probation for a period of two years on the conditions imposed herein and that the stay of his previously imposed suspension remain in effect.

_____

GEORGE W. DRAPER III, JUDGE

Russell, C.J., Stith and Teitelman, JJ., concur;
Fischer, J., dissents in separate opinion filed;
Breckenridge and Wilson, JJ., concur in
opinion of Fischer, J.

16



# SUPREME COURT OF MISSOURI
## en banc

IN RE:                                    )
                                          )
    NATHAN J. FORCK,                      )
                                          )
                                          )      No. SC88961
                                          )
    Respondent.                           )

### DISSENTING OPINON

I respectfully dissent from the principal opinion.  This Court suspended Nathan J. Forck's law license, stayed the suspension, and placed him on probation in December 2007 for violating the rules of professional conduct and terms of a monitoring agreement imposed by the Missouri Board of Law Examiners for his admittance to The Missouri Bar.  Following subsequent complaints filed against Forck in 2009, Forck and the Office of Chief Disciplinary Counsel ("OCDC") entered into a joint stipulation admitting two violations of Rule 4-1.1, Competence, and three violations of Rule 4-1.5, Fees.  Each of these ethical failures is a violation of Forck's probation.  Forck is before this Court to determine if probation should be revoked for these new violations of the rules of professional conduct.  The principal opinion incorrectly treats these violations as if the Court should analyze the facts and circumstances to determine the appropriate discipline for new rule violations as part of an original disciplinary proceeding.  Because Forck has violated the terms of his probation by engaging in conduct that violated the rules of

professional conduct, I would revoke Forck's probation and impose the previously ordered discipline suspending his license to practice law.

## Statement of the Facts

A full account of Forck's transgressions is set forth in the principal opinion. This statement of facts serves to clarify the procedural posture of this case and highlight the events that render revocation of Forck's probation appropriate.

The Missouri Board of Law Examiners recommended that Forck be admitted to The Missouri Bar in 2006 subject to a monitoring agreement among the board, Forck, and the OCDC. The board had legitimate concerns about Forck's prior excessive use of alcohol and arrests stemming from Forck's alcohol abuse.[1] The agreement required, among other things, that Forck abstain from the use of alcohol, attend group meetings for alcohol abuse, and report his attendance to an attorney monitor.

In May 2007, Forck was arrested and charged with third-degree assault following an altercation at a bar where he had been drinking alcohol. As a result, this Court indefinitely suspended Forck from the practice of law. The Court stayed the suspension and placed Forck on probation for two years. One condition of his probation was that he would not "engage in conduct that violates the Rules of Professional Conduct."

In January 2010, Forck moved this Court to issue an order of successful completion of his probation. The OCDC responded to that motion by stating that it had

_____

[1] Historically, legitimate concerns such as are present in this case could have kept Forck from obtaining a license to practice law. The allowance of this type of agreement does serve the interest of applicants who want the privilege to practice law and who successfully complete

2

received a number of ethical complaints against Forck that were still under investigation. The OCDC indicated that, as part of its investigation, it had requested bank records from Forck. Forck failed to produce these records and even attempted to quash a subpoena issued to the bank for production of the requested documents. Due to the pending investigation, the OCDC recommended that this Court overrule Forck's motion, which this Court did.

Despite his knowledge that he was under investigation by the OCDC for these additional violations of professional conduct during the period of probation, Forck filed a second motion for an order of successful completion of probation. Both motions filed by Forck attached an affidavit where he falsely swore he had not committed any violations of the rules of professional conduct during the probation term.[2] In response, the OCDC indicated that Forck was to blame for any delay in the investigation, and this Court overruled Forck's second motion.

At the conclusion of the currently pending OCDC investigation, Forck stipulated that he committed five new, separate rule violations in 2009—two violations of Rule 4-1.1, Competence, and three violations of Rule 4-1.5, Fees. Forck also stipulated that these ethical violations caused harm to his clients. The violations are further detailed in the principal opinion.

---

alcohol treatment but, of course, does not necessarily protect the public or protect the integrity of the profession when treatment is not successful.

[2] Although not admitted in the stipulation, it is beyond dispute that Forck also violated paragraph 2 of his conditions of probation, which required Forck to submit a quarterly report which was to include "a written statement under penalty of perjury regarding whether Respondent has

The stipulation provides that the OCDC was acting pursuant to Rule 5.225, which governs probation in the attorney discipline context. The stipulation does not ask for any new discipline for these new violations, but rather recommends that these probation violations result in the Court extending Forck's 2007 probation for one year. So not only does the OCDC not seek to revoke Forck's probation, but it also does not intend to seek any discipline for these new violations of the rules of professional conduct.

**Analysis**

Based on Forck's multiple disciplinary incidents, the multiple probation violations at issue here, his failure to comply with the OCDC's investigation, and his two attempts to have this Court order the successful completion of his probation despite the ongoing investigation of complaints against him, this Court should revoke Forck's probation and impose the suspension previously ordered as a result of the 2007 violations. In my view, this result is required because probation must mean something if it is to have any effect. Permitting attorneys to violate probation with little consequence sanctions bad behavior and damages the integrity of the legal profession, and, as stipulated, in this case caused harm to the public. Through his actions, Forck has demonstrated that he is no longer eligible for the probation imposed for his 2007 conduct. Accordingly, this Court should revoke probation and impose the originally ordered discipline.

To be clear, the OCDC is bringing Forck's 2009 competence and fees violations to the attention of this Court as probation violations. The OCDC is not seeking any

complied with the Rules of Professional Conduct and all conditions of probation during the preceding calendar quarter[.]"

discipline for Forck's 2009 conduct. Rather, the OCDC has stipulated that, despite Forck's probation violations, this Court should extend the probation imposed for Forck's 2007 misconduct. As such, this Court must decide whether, in light of the probation violations, Forck remains eligible for his 2007 probation—subject to an extended term as stipulated by the OCDC—or whether to revoke Forck's probation and impose the suspension that this Court stayed in 2007, conditioned on Forck's successful completion of probation. The principal opinion, however, does not answer this question. Instead, the principal opinion has incorrectly used the *ABA Standards for Imposing Lawyer Sanctions* to determine the appropriate discipline for Forck's 2009 competence and fees violations, ultimately concluding that probation would be best.[3]

When examining probation violations in the attorney discipline context, Rule 5.225 guides this Court's analysis. More specifically, Rule 5.225(f)(2) contains the procedure for probation violations and provides:

> If the chief disciplinary counsel receives information during the period of probation that any condition may have been violated, the chief disciplinary counsel may file a motion in this Court specifying the alleged violation and seeking an order requiring the lawyer to show cause why the probation should not be revoked and further discipline imposed. Further discipline may include additional probation, suspension, or disbarment. The filing of the motion stays the expiration date of the period of probation until final action is taken on the motion.

---

[3] The principal opinion improperly treats the procedural posture of this case as if the OCDC sought the imposition of new discipline for Forck's 2009 rule violations. The joint stipulation entered into between Forck and the OCDC, however, seeks to continue the stayed suspension and extend the term of probation entered for Forck's 2007 alcohol-related violation. The OCDC's brief to this Court specifically states that, though it is authorized to do so, the OCDC is not seeking new discipline for the 2009 rule violations. Counsel for the OCDC conceded at oral argument that this result means Forck will, in effect, receive less discipline than an attorney who was not on probation and committed the same conduct.

Rule 5.225 dictates that, when reviewing probation violations, this Court must decide whether to revoke probation and impose the originally ordered discipline for the initial violations or whether cause has been shown why probation should not be revoked. This is typically accomplished by ordering the allegedly offending attorney to show cause why probation should not be revoked. Where, as here, the OCDC enters into a stipulation with the attorney, the issues before this Court are, in light of the admitted probation violations, does the OCDC's stipulation adequately show cause why probation should not be revoked and does the recommendation adequately fulfill the purposes of attorney discipline. This Court has stated that the purpose of attorney discipline is to "protect the public and maintain the integrity of the legal profession." *In re Zink*, 278 S.W.3d 166, 169 (Mo. banc 2009). Therefore, in the event Forck shows the required cause, this Court must determine whether additional probation will protect the public and maintain the integrity of the legal profession or if a suspension is necessary to serve either purpose.

Unlike when this Court imposes original discipline, there is little guidance for deciding the appropriate sanction in light of a probation violation. The *ABA Standards for Imposing Lawyer Sanctions* (1991 ed.) set out no standards regarding probation revocation proceedings.[4] No reported case of this Court has dealt with the issue. Nor have any universal standards been developed for probation revocation in the reported cases of the other states. This increases the significance of the precedent established by

---

[4] Although the commentary to the *ABA Standards* suggests possible consequences for a probation violation, it does not provide any standards to apply when deciding which consequence is appropriate. The latter issue is ultimately what is before the Court here.

6

the principal opinion.[5]

Rule 5.225, however, does provide some insight. As the principal opinion notes, Rule 5.225(a)(2) sets out the eligibility requirements for probation in the attorney discipline context. An attorney is eligible for probation if the attorney is: 1) unlikely to harm the public during the probationary period and can be adequately supervised; 2) is able to perform legal services and is able to practice law without causing the courts or profession to fall into disrepute; and 3) has not committed acts warranting disbarment. Rule 5.225(a)(2). When imposing discipline in 2007, this Court necessarily determined that, in light of these considerations, Forck was eligible for probation and the Court could stay his suspension.

It follows that, in determining whether Forck has shown cause why his probation should not be revoked through his stipulation with the OCDC, this Court should reevaluate whether Forck remains eligible for probation, taking into consideration his 2009 ethical failings. This evaluation permits the Court to examine Forck's probation violations while still placing the proper emphasis on the procedural posture of this case. If—taking into consideration Forck's initial 2007 conduct and his 2009 transgressions— Forck remains eligible for probation, then this Court could keep the probation in place and, as the OCDC recommends, extend the term.[6] If, however, Forck's conduct has

---

[5] Prior to permitting probation, an attorney who had his or her license suspended, such as Forck, was not allowed to practice law unless reinstated. Actual suspension protected the public and maintained the integrity of the profession until the suspended attorney demonstrated rehabilitation and the competence to be reinstated.

[6] In a case like this one, where the OCDC does not intend to seek discipline for new rule violations that also constitute probation violations, the better question is: what would be the

7

rendered him ineligible for probation under Rule 5.225(a)(2), then this Court is left with little choice but to revoke probation and impose the stayed indefinite suspension.

In my view, upon his violation of the rules of professional conduct in 2009, Forck was no longer eligible for probation because he no longer could be considered "unlikely to harm the public during the probationary period" or "able to practice law without causing the … profession to fall into disrepute." Forck did, in fact, harm the public during his probationary period—at least five times. Forck's violations admittedly harmed his clients, thereby showing he no longer could meet the first eligibility requirement. Forck's violations have harmed the legal profession by undermining attorney credibility and competence in the eyes of his clients and anyone who reads the facts of this case, thereby showing he no longer could meet the second eligibility requirement.

Furthermore, Forck's checkered disciplinary history weighs in favor of revoking probation and ordering the suspension because it shows both that Forck is likely to cause harm to the public and has caused the legal profession to fall into disrepute. Strike One: Forck was admitted to the bar under a monitoring agreement with the Missouri Board of Law Examiners because the board was concerned with a number of alcohol-related incidents that occurred prior to Forck's application to the bar. As part of that agreement, Forck agreed to abstain from any alcohol use, attend alcohol—abuse meetings, and report his compliance with those conditions to an attorney monitor. Strike Two: Forck

---

proper sanction if all the violations—the initial violations as well as the probation violations—had all been brought as an original matter at the same time? While the ultimate purpose for the present action is the disposition of the probation violation, the initial rules violations should not be forgotten.

8

continued to drink alcohol and failed to verify his attendance at the meetings, and this resulted in an alcohol-related arrest and an assault in May 2007. Forck received suspension of his law license, which was stayed if he successfully completed two years of probation. Strike Three: Forck admits he committed five additional violations of the rules of professional conduct while on probation and that his elderly clients were harmed.

Forck also has stipulated that his 2009 rule violations caused harm to his clients. Forck has stipulated that, on two occasions, he failed to act with the level of competence demanded of the attorneys licensed to practice law in this state. Forck also has stipulated that, on three occasions, the fees he charged for the incompetent work that he performed violated the rules of professional conduct to the extent that he agreed to pay a total of $22,000 in restitution. Forck acknowledges that, in each instance, he caused harm to his clients.[7] On one occasion, a client hired Forck to prepare estate-planning documents. He did not complete the documents until after his client was no longer competent to sign them, and the client's heir was forced to tender documents prepared by a different lawyer previously hired by the client to the probate court. Forck caused harm to one of the most vulnerable categories of clients, and admits that he has caused substantial harm. Considering the magnitude of the harm caused, Forck is, in my view, no longer eligible for probation.

---

[7] Though the OCDC's stipulation has the rule violations listed in Counts I-III, Forck actually stipulated to five different rule violations: two violations of Rule 4-1.1 and three violations of 4-1.5. This amounts to five separate probation violations and the acknowledgement that each violation caused a client harm.

Forck's failure to comply with the ongoing investigations and his two attempts to obtain an order of successful completion of probation also weigh in favor of imposing the suspension because they have caused the profession to fall into disrepute. First, Forck failed to comply with the OCDC's investigation of the 2009 violations by refusing to produce bank records and attempting to quash a subpoena for those records. This non-compliance obstructed and prolonged the OCDC's investigation. Next, Forck filed two separate motions with this Court for an order of successful completion of probation with the knowledge that he was under investigation for rules violations. In each motion, Forck asserted that he had complied with all the conditions of his probation. Along with each motion, Forck filed an affidavit in which he falsely swore that he had complied with all the conditions of his probation. Forck now stipulates that he did not, in fact, comply with the conditions of his probation. Forck's attempts to obtain an order of successful completion of his probation despite the ongoing investigation render him ineligible for probation and weigh in favor of imposing the suspension.

In my view, Forck is ineligible for continued probation, and his probation should be revoked. The OCDC and Forck argue, however, that Forck should be subject only to additional probation because his circumstances have changed in that he no longer abuses alcohol, he has fired the staff who allegedly led him astray, this is the first time that he caused harm to his clients, and he has begun paying restitution to the clients he harmed.

In my view, these "changed circumstances" do not justify the minimal consequence the parties request. The thrust of the argument for extended probation appears to be that Forck's current violations are different from the cause of his original

10

suspension. The fact that Forck's vices have mutated from alcohol abuse to alcohol-related assault to incompetent representation of elderly clients and attorney fee abuse perpetrated on elderly clients does not instill any confidence that an extra year of probation protects the public or maintains the integrity of the legal profession.

**Conclusion**

This Court has an obligation to protect the public and maintain the integrity of the legal profession. Neither aim is served if attorneys face only light consequences for significant probation violations. This is particularly true where the probation violation is a violation of the rules of professional conduct that might, as the OCDC conceded at oral argument, have significant consequences if brought in an original independent proceeding. Extending probation here is effectively no consequence at all.

If probation is to have any effect or value in serving the purposes of attorney discipline, then probation violations must be met with real consequences, particularly when the probation violation is a subsequent violation of the rules of professional conduct.

In my view, the OCDC and the principal opinion have answered the wrong question. This Court is not now tasked with determining the appropriate sanction for Forck's 2007 violations of the rules of professional conduct. It was already determined that those violations merited a suspension. Instead, the Court is tasked with the reality that staying Forck's suspension and granting probation harmed the public and damaged the integrity of the profession. In light of the significant nature of the violations, I would revoke Forck's probation and impose the previously ordered suspension because, in my

11

view, Forck has demonstrated that allowing him the privilege to continue the practice of law is not worth the risk to the public or the reputation of the legal profession. This is so, particularly in light of the fact that Forck has not practiced law one single day in the six years since his admission to the bar without being subject to supervision.

_____
Zel M. Fischer, Judge